GAY OIL COMPANY *v.* STATE EX REL. ATTORNEY GENERAL.

## Opinion delivered March 1, 1926.

1. TAXATION—GASOLINE TAX ON MANUFACTURERS AND WHOLESALE DEALERS.—Under the Acts of the Regular Session of 1923, No. 501, and of the Special Session of 1923, No. 5, imposing gasoline taxes in identical language upon "manufacturers" defined as those who "produce, refine, manufacture, blend or compound gasoline within this State for sale to the jobber," etc., and upon "wholesale dealers" defined as "persons who sell, offer for sale, or have for use in this State for the purpose of selling to retail dealers or consumers gasoline imported from other States," *held* that the acts have no application to a dealer who, at the time the acts were passed, held in storage tanks gasoline previously manufactured in this State.

2. STATUTES—LEGISLATIVE OMISSIONS.—Courts often supply words necessary to complete the sense and to express the obvious legislative intent, where it appears from the context that words have been inadvertently omitted; but otherwise omissions of the Legislature, either by design or mistake, are beyond the power of the court to correct.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris,* Judge; reversed.

*Moore, Smith, Moore & Trieber,* for appellant.

*H. W. Applegate,* Attorney General, and *J. S. Abercrombie,* Assistant, for appellee.

McCULLOCH, C. J. Appellant, a domestic corporation, is engaged as a wholesale dealer in the business of buying and selling gasoline and motor oil in the State, and this is an action instituted against it by the State on

the relation of the Attorney General to recover delinquent taxes alleged to have escaped collection. The case was tried below on an agreed statement of facts, and the trial resulted in a judgment against appellant for the amount of the taxes claimed by the State.

The General Assembly of 1921 (Acts 1921, p. 685) enacted a statute imposing a so-called gasoline tax of one cent per gallon, and the validity of the statute was upheld by a decision of this court. *Standard Oil Co.* v. *Brodie,* 153 Ark. 114. That statute remained in force until April 1, 1923, when it was superseded by another statute, enacted by the General Assembly of 1923 (Acts 1923, p. 408), imposing a so-called gasoline tax of three cents per gallon; and this last-mentioned statute was in turn superseded by the statute now in force, enacted by the General Assembly of 1923 at the extraordinary session in October, 1923, imposing a so-called gasoline tax of four cents per gallon. Part of the delinquent tax sought to be recovered is claimed under the provisions of the statute enacted at the regular session of 1923 (act No. 501), and the other part is sought to be recovered under the statute (act No. 5) enacted at the extraordinary session. These two statutes are substantially similar so far as they relate to the method of collecting the tax. There is a bare suggestion in the brief of appellant as to the constitutionality of the first of these two statutes, but that question is not really argued or raised, and it is unnecessary to take up that question.

The contention of appellant is that there is no liability for any of the tax sought to be recovered for the reason that the facts of the case do not fall within the language of either of the statutes imposing the tax. Each of these statutes clearly expresses the intention of the lawmakers to collect the tax at the source, and there is a definition in each statute as to what the sources are to be —the manufacturer and the wholesale dealer. Act No. 501, §§ 3 and 4, contain the following definitions of the terms referred to as the source of collection of the tax:

"Section 3. The term 'manufacturer' used in this act shall be construed to include any person, firm, partnership, corporation, or association of persons who produce, refine, manufacture, blend, or compound gasoline within this State for sale to the jobber, wholesaler, consumer, or any person, firm, partnership, corporation or association of persons who in turn sell to the jobber, wholesaler or consumer within this State.

"Section 4. The terms 'wholesale dealer' as used in this act shall be construed to include any person, firm, partnership, corporation or association of persons who sell, offer for sale, or have for use in this State for the purpose of selling to retail dealers or consumers gasoline imported from other States."

Other sections require both the manufacturer and wholesale dealer to make monthly reports of the sales of gasoline, but there is a clause in the section relating to wholesale dealers which reads as follows:

"Section 7.  * * *  And the tax shall in no event be required to be paid by the wholesale dealer upon such gasoline as he may have purchased or acquired from the manufacturer in this State, who is also required to pay the tax on such gasoline."

Section 13 of the statute provides a penalty on manufacturers or wholesale dealers who fail or refuse to make monthly reports and pay the tax provided for, and that section concludes with a paragraph upon which the State in its argument lays stress, and which reads as follows:

"The intent and purpose of this act is to provide for the collection at the source, within this State, of a tax of three cents per gallon upon all gasoline sold in this State, and any person, firm, corporation, syndicate or association who sells, or offers for sale, any gasoline on which the privilege tax herein required has not been paid, or who attempts to evade the provisions of this act through any scheme, artifice or subterfuge, shall be guilty of a misdemeanor, and shall be punished as provided in this section."

Act No. 5, § 52, defines the terms "manufacturer" and "wholesaler" in precisely the same language as in the first mentioned statute, and there is a requirement, the same as in the former statute, imposing the duty upon manufacturers and wholesalers to make reports. Section 56 of that statute, which contains the requirement for reports to be made by the wholesaler, contains the following provision: "And the tax shall in no event be required to be paid by the wholesale dealer upon such gasoline or motor oils as he may have purchased or acquired from the manufacturer in this State who is required to pay the tax on such gasoline or motor oil." Another section deemed pertinent to the present inquiry reads as follows:

"Section 63. The intent and purpose of the provisions of this act relating to gasoline and motor oil tax is to provide for the collection at the source, within this State, of the tax upon gasoline and motor oil used in operating or propelling motor vehicles upon the public roads and highways in this State, and any person, firm, corporation, syndicate or association who wilfully sells or offers for sale any gasoline or motor oil on which the privilege tax herein required has not been paid, or who attempts to evade the provisions of this act, through any scheme, artifice or subterfuge, shall be guilty of a misdemeanor, and shall be punished as provided in this section. Provided, however, it is hereby declared to be the intention of this act that said privilege tax shall be paid upon said gasoline and motor oil only one time within this State, and it shall be the duty of all retail dealers or other persons, firms, or corporations selling or distributing gasoline and motor oil to ascertain in the manner provided by the rules of the State Auditor that the privilege tax herein authorized has been collected or paid before delivering it for sale or distribution, and any retail dealer or other person, firm or corporation who wilfully sells or offers for sale any gasoline or motor oil within this State, upon which said privilege tax has not

been paid or collected, without first paying the tax, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not exceeding one hundred dollars ($100) for each separate sale so made, and, in addition thereto, may be imprisoned not exceeding thirty (30) days for each offense.

"Every resident of this State who shall purchase gasoline in an adjoining State for use in this State in an automobile or motor vehicle shall be liable for the payment of four cents a gallon gasoline tax herein provided for on such gasoline, and shall pay the said tax to the county treasurer of the county into which he brings or has delivered the said gasoline, whether in the tank of an automobile or motor vehicle or other container, immediately on bringing the said gasoline into this State, or having it delivered herein, and such county treasurer shall remit such collection to the State Treasurer, and make a report thereof to the State Auditor each month. A violation of this section shall be punished by a fine not exceeding one hundred dollars."

The facts are that appellant had in its tanks on April 1, 1923, 75,949 gallons of gasoline, which was sold by appellant during the succeeding months, and on which no tax has been paid under authority of the statutes under consideration, and that on January 1, 1924, when act No. 5 went into effect, appellant had on hand, stored in its tanks, 140,033 gallons of gasoline, which was sold by appellant during the subsequent months, and on which the manufacturer from whom appellant had purchased had previously paid the tax of three cents per gallon under act No. 501, but on which no tax had been paid under act No. 5. All of the gasoline in controversy was purchased by appellant from manufacturers and distillers in the State, none of it having been imported into the State. The State claims, and has recovered under the judgment of the court below, three cents a gallon on all of the 75,949 gallons held in storage by appellant on April 1, 1923, and one cent a gallon on the 140,033 gallons held in storage by appellant on January 1, 1924.

It will be noted that the tax imposed under both of these statutes was to be collected at the specified sources, and those sources are defined in carefully selected language, about which there should be no misunderstanding. The question presented now is whether or not appellant and its particular transactions now under review fall within either of these definitions of manufacturer or wholesale dealer. A manufacturer is defined in each of the statutes to be "any person, firm, partnership, corporation, or association of persons who produce, refine, manufacture, blend, or compound gasoline within this State for sale to the jobber, wholesaler, consumer, or any person, firm, partnership, corporation or association of persons who in turn sell to the jobber, wholesaler, or consumer within this State." It is plain, we think, that appellant does not fall within this definition; it neither produces, refines, manufactures, blends or compounds gasoline within the State for sale or any other purpose. It is contended by the Attorney General that appellant is a producer within the meaning of the statute, and in support of this argument he cites the dictionary meaning of the word "produce," "to bring to view; exhibit; or declare." We cannot agree with this contention that the word "produce" in the statute has any such meaning. As applied in the statute to mineral products, the word has other meanings, such as, to make, to originate, or to yield. The term "wholesale dealers" is declared to be those who sell or offer for sale, or who have for use in the State, gasoline imported from other States, and it is clear that appellant does not fall within this definition, so far as the gasoline in controversy is concerned, for the reason that, according to the undisputed facts, the gasoline was not imported into this State, but it was produced here in this State, and purchased by appellant from the manufacturers. In other words, appellant is neither a manufacturer nor a dealer within the meaning of the statute. The Attorney General contends that the definition is enlarged by the other provisions of the statute quoted above, one in § 7 of act No. 501, declaring that

"the tax shall in no event be required to be paid by the wholesale dealer upon such gasoline as he may have purchased or acquired from the manufacturer in this State who is also required to pay the tax on such gasoline," and also the other parts of § 13 and of sections quoted above. We do not think these provisions of the statute serve to enlarge the definition of those who are required to pay the tax at the source of the product. Manufacturers and dealers are both required to make reports, but this requirement is to enable the proper officers to enforce payment, and not for the purpose of enlarging the definition of those who are to pay. Penalties are provided for failing or refusing to pay the tax, and for sales without paying the tax, but this applies to the payment of the tax prescribed in the other sections, and the requirement does not enlarge the class who are to pay, or the conditions under which payments are to be made. Neither does the declaration in § 13 of act 501 of the intention of the lawmakers serve to enlarge the classes required to pay or the circumstances under which they are to pay, for that provision refers to the "sources" as defined in the preceding sections quoted above. The fact that the gasoline involved in this controversy escaped taxation under this interpretation of the statute, affords no grounds for the court extending the language so as to embrace it. There is a clear omission to provide for the tax to be paid under circumstances described in the present case. Whether this occurred by mistake or intentional omission, we do not know. The framers of the statute may have overlooked it altogether, or they may have concluded that the omission would apply only to a negligible quantity of gasoline in comparison with the volume upon which the tax was to be paid in the future, and that it was not worth while to provide a method of collecting the tax on gasoline held in storage at the time the statute went into effect. At any rate, it is evident from the language used that the framers of the statute intended to provide for the collection on gasoline in the hands of the manufacturers and

dealers after the statute went into effect, and as appellant was neither a manufacturer nor a dealer, so far as concerns this gasoline, it is not liable for the tax. We are not at liberty to read into the statute words which are not found there for the purpose of correcting mistakes of the lawmakers. Courts often supply such words as are necessary to complete the sense and to express the obvious legislative intent, where it appears from the context that words have been inadvertently omitted, but otherwise omissions of the Legislature, either by design or mistake, are beyond the power of the court to correct. *Road Imp. Dist. No. 1* v. *Glover,* 89 Ark. 513; *Hodges* v. *Dawdy,* 104 Ark. 583; *United States* v. *Merriam,* 263 U. S. 179.

The judgment of the circuit court was erroneous in holding appellant liable for the tax. The facts are undisputed, and there is no necessity for a remand of the cause for another trial. The judgment is therefore reversed, and judgment will be entered here dismissing the complaint.

Smith and Humphreys, JJ., dissent.