Texas Co. *v.* Fort, Com'r *et al.*

Pan-American Petroleum Corporation *v.* Same.

(*Nashville*, December Term, 1934.)

Opinion filed April 6, 1935.

SEAY, STOCKELL & EDWARDS, of Nashville, for Texas Company.

COBB & JONES, of New Orleans, La., and TRABUE, HUME & ARMISTEAD, of Nashville, for Pan-American Petroleum Corporation.

Roy H. Beeler, Attorney-General, Edwin F. Hunt, Assistant Attorney-General, and W. C. Cook, of Dickson, for the State.

Mr. Justice Chambliss delivered the opinion of the Court.

These causes were heard together. They present the same questions. Both suits were brought to recover gasoline taxes paid under protest. The chancellor dismissed both bills on demurrer. Both complainants appealed.

By chapter 130, Acts 1933, the Legislature amended various sections of the Code of 1932, beginning with section 1126, so as to provide that the gasoline tax of six cents per gallon (see Pub. Acts 1931, chap. 40) should be paid by dealers and distributors according to the amount held in storage in this state, instead of according to the number of gallons withdrawn from storage, as provided by the Code.

The constitutionality of this amendatory act is assailed on the ground that it fails to comply with the requirements contained in section 17, article 2, of the state Constitution, that "no bill shall become a law, which embraces more than one subject; that subject to be expressed in the title," and that, "All acts which . . . amend former laws, shall recite in their caption or otherwise, the title or substance of the law . . . amended." We understand counsel for appellants to concede that reference to the sections of the Code of 1932 is a sufficient recital of the title of the act to be amended to satisfy the requirement that the amendatory act shall recite the title of the law to be amended. As said in *Gamble* v. *State,* 159 Tenn., 446, 19 S. W. (2d), 279, 280,

this "was long since decided." *State* v. *Runnels*, 92 Tenn., 320, 21 S. W., 665.

But the insistence is that the subject of the amendatory act is not "embraced in the title" of that act; that the language of the title used is restrictive and the subject so limited that it should not be construed to refer to "storing" of gasoline, which it is alleged is a new and independent subject of taxation. Close reasoning is resorted to, turning, apparently, on the construction to be given the word "said," preceding the words "gasoline taxes," and preceding the word "laws."

The caption or title of the Amendatory Act of 1933 reads, "An Act to amend Sections 1126 . . . of the Code of Tennessee, 1932; said sections of the Code relating to the Gasoline Tax Laws, providing for an improved method of assessing and collecting said gasoline taxes and to strengthen the enforcement of said laws, and to repeal all laws," etc. It is insisted that the language of the caption must be limited in its application to just such "gasoline taxes" and just such "laws" as were provided for in the Code sections cited; that "storing" was not embraced within the "said gasoline taxes," or tax laws, so provided for; that therefore the amendment making "storing" a privilege brings in a new and independent subject, not within the scope of the limiting phrase "said gasoline taxes," or "said" laws.

To this we are unable to agree. The sections amended are under a subheading of the Code reading "Gasoline Tax." It is the state "Gasoline Tax" which the title of the amendment gave notice of a purpose to amend, that is, to change, correct, revise. *Gamble* v. *State, supra.* And notice was further given that it was proposed by

this amendment to provide for "an improved method of assessing," etc., this gasoline tax. To "assess" is to determine and impose a tax; also, but not alone, to value for taxation. Levy is a synonym of assess. Webster's New International. It appears, therefore, that the title of this amendment to the Code sections cited gave notice of a purpose to change and improve the method of assessing, imposing, levying, the state gasoline taxes, so as to strengthen the enforcement of this law set forth in the Code sections cited. The details of the plan were not required to be set forth in the title. Having called attention to the particular form of privilege taxation to be dealt with, that is, gasoline taxes, it was necessary only to indicate the object aimed at by the amendment. This was clearly done. The title discloses the result aimed at; the method is for the body of the act. The "subject" only is called for in the title, not the story; the purpose to do a certain thing, not just how it is to be done. The purpose declared here was to amend the gasoline tax laws, so as to provide an improved method of assessing and collecting this tax. In the body of the amendment the details were set forth clearly, and under all our holdings this was sufficient. For example, see *Van Dyke* v. *Thompson,* 136 Tenn., 136, 189 S. W., 62; *Hunter* v. *Conner,* 152 Tenn., 258, 277 S. W., 71; *Henderson Co.* v. *Breeden Bros.,* 148 Tenn., 278, 255 S. W., 359; *Couch* v. *State,* 140 Tenn., 156, 203 S. W., 831; *Petty* v. *Phoenix Cotton Oil Co.,* 150 Tenn., 292, 264 S. W., 353. The manner, modes, means, instrumentalities of enforcement, etc., may be embraced in the body of the act, though not recited in the title. *State* v. *Yardley,* 95 Tenn., 546, 553, 32 S. W., 481, 34 L. R. A., 656; *State* v. *Brown,* 103 Tenn., 449, 458, 53 S. W., 727; *Peterson*

v. *State,* 104 Tenn., 127, 131, 56 S. W., 834; *Rhinehart* v. *State,* 121 Tenn., 420, 434, 117 S. W., 508, 17 Ann. Cas., 254. The generality of the title is no objection, if not made a cover for incongruous legislation, which by no fair intendment can be considered as having a necessary or proper connection with the subject expressed in the title. *Cannon* v. *Mathes,* 8 Heisk., 504, 519. We think it cannot be fairly said that an act which amends the body of our gasoline tax laws so as to measure the tax imposed according to the amount stored, rather than the amount withdrawn from storage, has no proper connection with, is not germane to, the general subject expressed in the title, ''providing for an improved method of assessing and collecting said gasoline taxes.''

■ ■ It is next urged for appellants that under a proper construction of the law as amended the tax applies only to such gasoline as appellants have placed in storage since the effective date of the Amendatory Act, April 22, 1933. The state contended that the tax applied to all gasoline stored, that is, in storage, by appellants on and after said effective date. The appellants paid under protest, as before stated.

The opinion of the learned chancellor so well discusses and disposes of this issue that we incorporate and adopt this part of his opinion, as follows:

''The section of the Code, section 1140, as amended by chapter 130, sec. 13, exempts from taxation gasoline stored for export to points outside the state, if the gasoline is stored in a separate tank marked 'export tank,' provided it is not stored for export for longer than a period of sixty days. Under this exemption it would hardly be insisted that gasoline which was in storage when the act became effective and remained in storage

for a period longer than sixty days, would not fall within the provisions of the act taxing such gasoline. The amendatory act involved expressly purports in its caption to amend section 1140 of the Code and the amendatory matter in the body of the Act is germane to the section of the Code and the matter covered thereby. This part of the amendatory act does not violate said provision of the Constitution.

"If the act as amended imposed a tax only on gasoline imported and stored after its enactment, and exempted from taxation all gasoline that had been imported before and remained in storage after the enactment of the law, it would violate the Equal Protection Clauses of the State and Federal Constitution because you would have an act under which members of each class were doing exactly the same kind of business under the same conditions and for the same purposes, yet one is taxed and the other is exempt. There would be no reasonable basis for such a classification under either the State or Federal Constitution. Moreover, this construction would make the act violate the Commerce Clause of the Federal Constitution, because the privilege tax would not apply to gasoline imported before but remaining in storage after the effective date of the amendatory act, and gasoline imported and stored after the act would be taxed. Such a construction would place a direct burden on Interstate Commerce and make the act unconstitutional for that reason. The act as amended lays a privilege tax on engaging in the business of storing gasoline, and certainly gasoline shipped into the state before, as well as gasoline shipped into the state after, the effective date of the act and stored, are in the same class so far as storage is concerned, which is the

business taxed. The object of the privilege tax involved is the storage of gasoline, and this privilege was exercised and enjoyed by the defendants after the passage of the act, and it would be an anomalous construction of the challenged act that the defendants could enjoy the privilege, namely of importing gasoline before and keeping it in storage after the passage of the act, without paying the privilege tax on the business of storing, and yet be taxed on gasoline imported and stored after the passage of the act. Manifestly the tax is based on the business of keeping in storage, gasoline, and this privilege is exercised by the defendants on gasoline imported before and stored just as it is on gasoline imported afterwards and stored. It certainly cannot be insisted on this record that the gasoline upon which the tax was collected was not in storage after the passage of the act. Importing or the manner of getting the gasoline into the state for storage, is not an element of the business taxed, but it is the privilege of engaging in the business of storing that is taxed. Under the amended act gasoline could be imported into the state, and until it was sold, stored or distributed, the tax would not attach, and it can make no difference when the importation takes place whether before or after the effective date of the act, provided the gasoline was in storage after the effective date of the act.

"It is an elementary principle of construction that if a statute is susceptible of two reasonable constructions, one that will sustain its constitutionality and one that will destroy the act, it is the duty of the Court to adopt the construction which will preserve the law. It is insisted that the tax upon the gasoline that was stored prior to the passage of the amendatory act, offends that

part of our Constitution which provides that all property taxes shall be equal and uniform.

"In the case of *Foster & Creighton Co.* v. *Graham,* 154 Tenn., 412, 285 S. W., 570, 47 A. L. R., 971, it was insisted that the tax there challenged was a property tax, because the right to store gasoline was a natural right and therefore could not be taxed as a privilege. The Supreme Court did not agree with this insistence. It in substance ruled that there is no natural right in a citizen to store gasoline any more than to store dynamite or gunpowder, and that the State has the right to tax the storage of gasoline as a privilege. This case settled the proposition that the tax levied by chapter 130 is not a property tax on the gasoline placed in storage before the effective date of the amendatory act, but that it is a privilege tax on the engaging in the business of storing gasoline based on the number of gallons in storage.

"Again it is said that the Foster & Creighton Company Case is decisive of the question presented here of the validity of the act amending the sections of the Code relating to the gasoline tax. The act before the Court in the Foster & Creighton Company Case was an act which purported to amend an act that levied a tax on engaging in the business of producing and selling in the state or importing and selling in the state, gasoline. This act was amended so as to extend the tax to cover gasoline stored and allowed to be withdrawn from storage for sale or use, and since the gasoline stored and allowed to be withdrawn from storage was not covered by the caption of the act amended, which as stated, was an act imposing a tax on engaging in the business of producing, importing and selling gasoline, it became nec-

essary to amend the caption of the act by including the words 'or storing or distributing' after the word 'selling.' But no such situation is presented in the case under consideration. Here the sections of the Code sought to be amended impose a privilege tax on the business of storing and withdrawing from storage, gasoline and the amendatory act is germane to this act, and it is not necessary to amend the caption of the act so as to add after the recited sections of the Code, that it is an act to place a tax on the storage of gasoline because the original act contained in the sections of the Code amended, already provided for a tax on storage and withdrawal of gasoline.

"The case of *Pan-American Petroleum Company* v. *Miller,* 154 Miss., 565, 122 So. 393, and the case of *Gay Oil Company* v. *State,* 170 Ark., 587, 280 S. W., 632, are cited and relied on by the complainants on the question that the amended statute involved did not apply to gasoline held in storage at the time the amendatory act went into effect. Both of these decisions were rendered by a divided court. When the Foster & Creighton Company Case was before our Supreme Court, the complainant relied on a Mississippi case holding that an act imposing the privilege tax upon persons pursuing the business of extracting turpentine from standing trees, imposed a property and not a privilege tax, and was unconstitutional under a section of the Mississippi Constitution which corresponds to article 2, section 28 of our Constitution, and it was insisted that the tax under consideration in the Foster & Creighton Company Case was unconstitutional because it was a property and not a privilege tax. This insistence was rejected by our Su-

preme Court and it said in speaking of the Mississippi case:

" 'The tax in that case was held by a majority of the court to be a property tax, Justices POTTER and COOK dissenting, being of the opinion that the tax was levied on the occupation or business of extracting crude turpentine from the tree, that the statute said so in plain English, and we may say that we are impressed with the logic of the dissenting opinion, and will not be controlled by the opinion of the majority in determining whether the tax under consideration is a property tax or a privilege tax. We think it is the latter, and so hold.' 154 Tenn., 428, 285 S. W., 575.

"This language is peculiarly appropriate to the case of *Pan-American Petroleum Company* v. *Miller*. The cogent reasoning and logic of the dissenting opinion of Mr. Justice ANDERSON is more impressive and persuasive than the majority opinion, and to my mind applies with peculiar force to the act under consideration."

Concurring with the chancellor, his decree dismissing these bills is affirmed.