316 So.2d 194 (1975)
Rita Brown, wife of/and Lee H. BROWN
v.
EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY, et al.
No. 6776.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1975.
Rehearing Denied August 6, 1975.
Writs Refused October 10, 1975.
*195 Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Vincent J. Glorioso, Jr., New Orleans, for Rita Brown, wife of/and Lee H. Brown, plaintiffs-appellees.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John C. Combe, Jr., New Orleans, for Billy Anderson, Jones Chemicals, Inc., and The Travelers Insurance Company, defendants-appellants.
Drury, Lozes & Curry, Rene A. Curry, Jr., New Orleans, for Employers Commercial Union Ins. Co., defendant-appellee.
Before REDMANN, STOULIG and SCHOTT, JJ.
STOULIG, Judge.
Plaintiffs, Rita and Lee H. Brown, were awarded $20,000 for personal injuries and $3,410.06 in special damages, respectively, from defendants Jones Chemicals, Inc., the owner; Billy D. Anderson, the driver; and The Travelers Insurance Company, the liability insurer, of a tractor-trailer that collided with an automobile in which Mrs. Brown was a guest passenger.[1] In appealing this judgment, defendants seek a reversal of the liability finding and alternatively request a reduction in quantum.
The trial judge's factual finding on negligence is based on credibility. In written reasons for judgment he stated he accepted the account of plaintiff which was corroborated by the automobile driver and two independent witnesses as opposed to that of Anderson, the tractor driver. Finding no manifest error in this conclusion, we too accept this version:
On October 1, 1971, a section of the Chef Menteur Highway in the City of *196 New Orleans was undergoing repairs. At this point, the two inbound, or westbound, traffic lanes were closed to through traffic, and the remaining two lanes, usually reserved for eastbound traffic, were being used for both east and westbound motorists. Westbound traffic moved in the lane adjacent to the neutral ground or what would normally be the eastbound passing lane.
At approximately 8:30 a.m., Linda Murray, driving the automobile owned by plaintiffs (her parents) entered that side of the highway undergoing repairs. She intended to drive eastward but it was first necessary for her to proceed on the blocked off side of the roadway in a westerly direction to a point where there was a break in the neutral ground where she would then be able to execute a left turn and proceed east. As she was stopped within the neutral ground break, defendant Anderson, approaching from her left in the tractor-trailer, lost control of his rig, knocked down several orange cones that were serving temporarily as lane dividers, swerved back toward his right, and hit plaintiff on the left front fender and front grill. The heavy rig then continued out of control for 200 feet before overturning on its right side on the neutral ground. Linda Murray committed no negligent act that caused or contributed to the occurrence of the accident. At the time it was struck, her automobile was stopped and was not protruding into the traffic lane in which Anderson was traveling. We affirm the trial court's finding the sole proximate cause of the accident was the negligence of Anderson in failing to maintain control over the tractor-trailer.
We next consider appellants' argument that an award of $20,000 to Mrs. Brown is excessive. The trial judge concluded she sustained neck and shoulder injuries, a post traumatic neurosis and developed chronic symptoms of dizziness and vomiting as a result of this accident. The medical testimony only supports the conclusion that the neck and shoulder injuries were caused by the accident.
Before this accident, Mrs. Brown complained of numerous health problems and frequently consulted Dr. John L. Kron for treatment. His records indicate she consulted him as early as 1961 and the frequency of her complaints increased between 1967 and 1971. Without detailing every medical problem for which she sought treatment, we note that throughout her history she intermittently complained of nausea, weakness and dizziness. When she visited Dr. Kron two weeks prior to the accident, and two days prior thereto, she complained of shoulder pain on both occasions. Because we get the impression Mrs. Brown did not have a tendency to minimize her complaints of pain, we do not think she experienced severe pain in the neck and shoulder area prior to the accident. Otherwise it would have been noted repeatedly in her long medical history. X rays taken within days of the accident revealed she had a degenerative condition of the cervical spine that was asymptomatic until her injury caused by the collision of the automobile and truck. That the impact was severe is evidenced by the fact the car sustained $1,408 in damage.
When she consulted Dr. Kron on October 7, 1971 with complaints of pain in the neck and shoulder, he treated her with muscle relaxants, analgesics and diathermy for three and one-half months. On January 20, 1972, he discharged Mrs. Brown as cured with no residual disability. He told her she might possibly experience an occasional twinge of pain.
Dr. Kron credited the cervical flare-up to the trauma of the collision. Because he had been Mrs. Brown's treating physician for ten years prior to the accident and was well conversant with her medical history, we are impressed with his evaluation of her condition and his prognosis that she had recovered from the neck and shoulder injury in the latter part of January 1972. For the pain and suffering *197 she experienced during this period she is entitled to general damages.
Approximately four months after she was discharged as cured by Dr. Kron, she consulted an internist, Dr. Shea Halle, with a variety of complaints including neck and shoulder pains. Dr. Halle was of the opinion that the accident precipitated frequent episodes of nausea and dizziness, activated a dormant degenerative cervical condition by causing painful symptoms, and produced a traumatic neurosis. His opinion that the dizziness and nausea attacks were precipitated by the accident were based on Mrs. Brown's inaccurate history through which she led him to believe she had had no recurring attacks of nausea and dizziness before the accident. We cannot sustain a finding that Mrs. Brown's complaints in this regard were either caused or aggravated by the accident, because Dr. Kron's records establish these problems were present long before the accident and there is no credible evidence to establish they increased in frequency or severity afterward.
The proof of post traumatic neurosis also is insufficient to support a judgment. Dr. Halle testified as an internist and from experience in the armed service with battle fatigue cases he was qualified to diagnose emotional problems. While this may be true, we note that at one point Mrs. Brown was referred to Dr. Wayne Hill, a neurologist and psychiatrist, by Dr. Halle, who explained he sought a consulting opinion because he "couldn't put it together". Obviously Dr. Halle could find no clinical basis for the recurrence of Mrs. Brown's neck pain, nausea, and dizziness over an extended period of time without improvement. Because Dr. Hill was one of the consultants to whom Mrs. Brown was referred to determine whether the complaints were psychological in origin, it would seem that the best evidence of traumatic neurosis would be the testimony of Dr. Hillthe psychiatristparticularly in view of the fact she consulted him a month or two before the trial. His unexplained failure to appear as a witness in Mrs. Brown's behalf creates a presumption his testimony would not be favorable.[2]
In summary we conclude the medical evidence establishes Mrs. Brown suffered severe neck and shoulder pain that was caused by the trauma activating a degenerative cervical spine condition and it subsided within four months of the accident. Further, the only residual effect she would experience would be an occasional twinge of pain. The tendency toward nausea and dizziness cannot be attributed to the accident. The medical evidence adduced fails to establish that Mrs. Brown suffers from one or more traumatic neuroses occasioned by this accident.
The award of $20,000 was based on a finding plaintiff was experiencing discomfort from three sources at the time of the trial with no definite prognosis as to when any would be alleviated. We find that Mrs. Brown is entitled to damages for only her cervical injury that was substantially cured within four months with the residual of occasional discomfort. For this injury she is entitled to an award of $9,500 in general damages.[3]
Appellants did not argue or brief the issue as to whether the special damages should be modified. In his answer to the appeal, appellees sought only an increase in the quantum awarded for personal injuries and damages for frivolous appeal. The amount of special damages was not disputed and therefore this aspect of the appeal is not before us.
For the reasons assigned, the judgment appealed from is amended to reduce the award of $20,000 in favor of Rita *198 Brown to $9,500, and as amended,[4] affirmed. Plaintiff Rita Brown is to pay the costs of this appeal.
Amended and affirmed.
REDMANN, J., dissents with written reasons.
SCHOTT, J., concurs with written reasons.
REDMANN, Judge (dissenting).
Because, as uncontradicted testimony shows, the automobile after the accident was situated in the truck's lane on the highway, and the damage to the automobile extended across its entire front, it is impossible that the car could have been, prior to the accident, wholly outside the highway lanes being used. If the truck (coming from the car's left) had first struck the car's left front fender so as to hook on to the car and drag the car along a few feet it is improbable that the entire front of the car would have been damaged. But, more important, during the few feet involved the car would have been hooked on to, and would therefore have stayed in the line of travel of, the truck's right side, and therefore could not have been dragged three feet across the truck's path.
Plaintiff driver at trial denied her pretrial deposition admission that she was lighting a cigarette at the time of the collision. Defendant's brief, in one page, demonstrates that no other witness plaintiff presented was in a position to give accurate testimony of where the collision occurred. None of them saw the collision, and their support of the conclusion that the car had already been at the intersection some seconds does not contradict that the driver, distracted by lighting her cigarette, allowed the car to move, as the truck driver testified, into the path of the truck.
Plaintiff driver's trial-time testimony is the only support of the trial court's conclusion on liability. This testimony is not acceptable because it contradicts both her own pre-trial deposition and the physical evidence.
The physical evidence corroborates the truck driver's testimony. The judgment should be reversed.
SCHOTT, Judge (concurring).
In addition to the medical evidence summarized in the majority opinion, Mrs. Brown, on April 25, 1972, consulted Dr. Henry LaRocca, an orthopedic surgeon, with complaints of back pain radiating into the upper extremities, headaches, dizziness, shoulder pain, and nausea. Upon examination Dr. LaRocca diagnosed her condition as cervical spondylosis, a degenerative condition which predated the accident. He prescribed medication and fitted her with a cervical collar. From July 6 to July 12 she was hospitalized for full-time cervical traction and was still being treated by Dr. LaRocca at the time of the trial. At her last visit, one month before trial, she was still complaining of neck and shoulder pain and headaches. Dr. LaRocca expressed the opinion that her pre-existing spondylosis was aggravated by the accident, but on cross examination he allowed that "the spondylosis could account for the pain which could be symptomatic even without an accident." As to whether the disease was permanently altered so that the frequency of symptoms increased more than it would have without the accident he said:
"I really have no way of determining that. So these degenerative spines don't *199 accept injury as well as a normal one would. You just have to attribute it together one way or the other."
He specifically ruled out any connection between her neck condition and her nausea and dizziness.
The trial judge's award of $20,000 was for "neck and shoulder injuries. . . dizziness, vomiting, and a post traumatic neurosis." Since the record does not support the causal relationship between the accident and the dizziness and vomiting or a post traumatic neurosis the award was excessive, and I concur that $9500 is adequate for the neck and shoulder injuries including possible aggravation of pre-existing spondylosis.
NOTES
[1] The trial of this matter was consolidated with the companion suits of Jones Chemicals, Inc. v. Linda Murray et al., 316 So.2d 201, No. 6775 on our docket; and Linda Borja, wife of/and James Murray v. The Travelers Insurance Company et al., 316 So.2d 199, Docket No. 6777 of this court.
[2] Montgomery v. State, Department of Highways, 231 So.2d 597 (La.App. 3d Cir. 1970).
[3] Prattini v. Bennett, 281 So.2d 187 (La.App. 4th Cir. 1973).
[4] We are aware LSA-Const. Art. 5, § 8(B) (1975), requires, inter alia, a case to be reargued in this court before a panel of five judges "* * * when a judgment of a district court is to be modified or reversed and one judge dissents * * *." However, the panel is of the unanimous opinion this provision is inapplicable because in the instant case the dissenting opinion addresses itself to the issue of liability; whereas, the modification of the trial court's judgment by the majority involves a reduction in quantum.