**Jayne Ann WOODS, Commissioner of Revenue, State of Tennessee, et al., Appellants,**

v.

**Earl PHILLIPS and Raymond Pennington, d/b/a Pennington & Jones Trucking Company, Appellee.**

Supreme Court of Tennessee.

Dec. 5, 1977.

---

David S. Weed, Asst. Atty. Gen., Nashville, for appellants; Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel.

George H. Buxton, Jr., Buxton, Lain & Buxton, Oak Ridge, for appellees.

## OPINION

BROCK, Justice.

This is a suit for the recovery of motor vehicle license taxes paid under protest. The Chancellor ordered a refund and the Commissioner of Revenue appealed.

The taxpayers are engaged in the business of hauling coal by means of trucks operated as private carriers under special zone licenses ("zone tags") authorized by T.C.A., § 59–423(G) which entitled them to favorable tax rates. The State alleged that certain of the taxpayers' trucks violated the maximum allowable gross weight limitation provided by T.C.A., § 59–1109, and, consequently, revoked their zone tag privileges and required re-registration of their trucks under the general licensing law. The State assessed and collected from the taxpayers the higher tax plus a 20% penalty set forth in T.C.A., § 59–514. The taxpayers sued for recovery of these additional sums, contending that Chapter 765 of the Public Acts of 1976 [codified as T.C.A., § 59–423(G)], the statute upon which the State's action was based, was unconstitutional because it extended to private carriers a penalty which was formerly applicable only to public carriers and that this penalty provision was not referred to in the caption of the Act. Taxpayers thus argued that the Act violated Article II, Section 17 of the Ten-

nessee Constitution. Taxpayers also insisted that the 20% penalty provision of T.C.A., § 59–514 was inapplicable to vehicles operating with zone tags.

The Chancellor held that the additional motor vehicle taxes assessed and the penalties imposed were not authorized by law, it being his opinion that Chapter 765 of the Public Acts of 1976 violated Article II, Section 17 of the Tennessee Constitution because the body of the Act was broader than its caption. From the decree of the Chancellor the Commissioner of Revenue has duly perfected an appeal to this Court.

I

Article II, Section 17 of the Tennessee Constitution is as follows:

"Bills may originate in either House; but may be amended, altered or rejected by the other. No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended."

The caption of Chapter 765 of the Public Acts of 1976 is entitled:

"AN ACT to amend Tennessee Code Annotated, Section 59–423, relating to the registration of freight motor vehicles by extending the provisions concerning the issuance and use of special licenses based on zones of operation to private carriers."

The code section referred to in the caption had its origin in Chapter 105 of the Public Acts of 1939. Since that time few legislative sessions have failed to enact at least one amendment to the original legislation requiring the registration and licensing of freight motor vehicles. Zone tags similar to those issued to plaintiff-taxpayers were first authorized by Chapter 324 of the Public Acts of 1969. Section 1 of Chapter 324 amended subsection A of T.C.A., § 59–423 (private carriers), and added the same provision for the issuance of zone tags to public carriers under the same terms and for the same fee. Section 2 went on, however, to include a penalty provision for violation of the territorial limitation placed on a special zone license or for violation of the maximum gross weight limitation set forth in T.C.A., § 59–1109(C). As further modified by subsequent amendments,[1] Section 59–423 provided with respect to *private* carriers:

"... that freight motor vehicles with declared maximum gross weight, including vehicle and load, in excess of eighteen thousand (18,000) pounds, used and operated within the state of Tennessee exclusively for local hauling within a zone not greater than fifteen (15) air miles beyond the limits of any municipal corporation shall be required to pay a registration fee of three hundred and ten dollars ($310) in lieu of purchasing any other license required in subsection A hereof. Provided, that in counties having metropolitan government, the county line shall be the limit of operation of motor vehicles described in this paragraph."

With respect to *public* carriers, T.C.A., § 59–423, provided:

"... that freight motor vehicles with declared maximum gross weight, including vehicle and load, in excess of eighteen thousand (18,000) pounds, used and operated within the state of Tennessee exclusively for local hauling with a zone not greater than fifteen (15) air miles beyond the limits of any municipal corporation shall be required to pay a registration fee of three hundred and ten dollars ($310) in lieu of purchasing any other license required in subsection B hereof. Provided, that in counties having metropolitan government, the county line shall be the limit of operation of motor vehicles described in this paragraph.

1. Chapter 301, Public Acts of 1971; Chapter 97, Public Acts of 1973; Chapter 747, Public Acts of 1974.

"Provided, further, any carrier whose truck operation is restricted to movements over the streets and highways of this state may apply to the commissioner for a county use license, the annual fee for which shall be four hundred dollars ($400). The carrier must upon application identify the truck and the base in the county in which it is to be registered under such special license and attest that the vehicle is to be operated exclusively in the base county and such other counties as may adjoin it. Movements from the base county to one adjoining are to be restricted to the delivery of freight to its final destination or place of consignment and for the purpose of bringing freight from its place of origin to any point in the base county.

"Finally, any licensee who violates either the territorial limitation placed on a license or the maximum allowable gross weight limitation provided by § 59–1109, subsection C, in addition to being liable for any other penalties under this title, shall also be denied the right to license such truck or its replacement under an exception to the general licensing law for a period of two (2) consecutive years following the year in which the violation occurs. The commissioner is hereby authorized to and empowered to promulgate rules and regulations for the administration of this section."

In a recent opinion of this Court not designated for publication, *McCall Trucking Co., Inc. v. Tidwell*, the punitive provisions of T.C.A., § 59–423(B) were challenged by taxpayers whose trucks operated with zone tags as private carriers. The Commissioner of Revenue contended that the punitive provision provided in the last paragraph quoted above applied to *private* carriers as well as *public* carriers. The Court disagreed, holding that the above-quoted penalty did not apply to private carriers registered under the zone privileges allowed in T.C.A., § 59–423(A).

In 1976 the 89th General Assembly enacted Chapter 765, which amended T.C.A., § 59–423, by deleting all of the statutory language quoted above (the last paragraph of subsection A and the last three paragraphs of subsection B) and by adding a new subsection G as follows:

"G. Special Zone Licenses:

"Class 1. It shall be permissible for any owner or operator of a freight motor vehicle which is to be operated exclusively within a zone limited to the streets of a designated municipal corporation and to the highways for a distance not to exceed fifteen (15) air miles beyond the limits of said municipality, to apply for and be issued a special municipal zone license. In counties having a metropolitan form of government the county line shall be the limit for the operation of motor vehicles registered under this special license. The annual fee for this special license shall be three hundred and ten dollars ($310).

"Class 2. It shall be permissible for any owner or operator whose truck operation is restricted to movements over the streets and highways of this state having a freight motor vehicle which is to be operated exclusively in a given county, and the counties that adjoin it, to apply for and be issued a special county zone license. The owner must, upon application for this special license, declare the base county and attest that the vehicle is to be operated exclusively in the base county and such other counties as may adjoin it. Movements from the base county to one adjoining are restricted to the delivery of freight to its final destination, or to the place of consignment, or for the purpose of bringing freight from its place of origin to a point in the base county. The annual fee for this special license shall be four hundred dollars ($400).

"Any licensee whose truck is found to be in violation of either the territorial limitation placed on any special zone license provided for in this subsection or the maximum gross weight limitation

provided for in § 59-1109 subsection C shall be required to immediately re-register it under an applicable general licensing provision and shall in addition, be denied the right to license the truck or its replacement under any exception to the general licensing law for a period of two (2) consecutive years following the year in which the violation occurs. The commissioner is authorized and empowered to promulgate rules for the administration of this subsection."

The primary effect of Chapter 765, as enacted, was to erase the private carrier-public carrier distinction upheld in *McCall, supra,* thus subjecting private carriers to essentially the same penalties for violations of the territorial limitation or maximum gross weight limitation placed on vehicles operating with zone tags, viz., re-registration under the general licensing laws and denial of zone tags or any other exception to the general licensing law for two years, as were previously applicable to public carriers alone.

## II

Taxpayers' constitutional attack on Chapter 765 is based upon the contention that there is no reference in the caption to the *penalty* provision of the Act, the caption merely indicating amendment of T.C.A., § 59-423 "by extending the provisions concerning the *issuance* and *use* of special licenses based on zones of operation to private carriers." (Emphasis added.) Mr. Justice Harbison, speaking for this Court in *State ex rel. Blanton v. Durham,* 526 S.W.2d 109, 111 (Tenn.1975), said:

"The history of Article 2, Section 17, of the Tennessee Constitution and the salutary purposes which it is designated to serve have been noted in a great number of previous decisions of this Court, and we do not believe it necessary to discuss them in detail here. Essentially, the constitutional provision requires that the title, or caption, of an act state the subject of the act, and that in the case of laws which repeal, revive or amend former laws, proper reference shall be made, in the caption or otherwise, to the title or substance of such former laws.

"Basically, the purposes of this constitutional provision was to prohibit so-called "omnibus bills" and bills containing hidden provisions of which legislators and other interested persons might not have appropriate or fair notice." (Citing cases.)

Since this Court's decision in *Hays v. Federal Chemical Co.,* 151 Tenn. 109, 268 S.W. 883 (1925), our law has recognized a distinction between the titles of amending acts which merely indicate that the original act is to be amended generally and titles which specify with particularity the amendment to be made. As summarized in *Tennessee Electric Power Co. v. City of Chattanooga,* 172 Tenn. 505, 517, 114 S.W.2d 441, 445 (1937):

"A statute reciting the title or substance of a former law and expressly purporting to amend same need not indicate the particular and specific character of the amendment, if the amendment is germane to and embraced in the subject expressed in the original act (citing cases). However, where the title of the amendatory act recites the title of the act to be amended and also specifies the amendments to be made, the legislation is thereby limited to the amendment specified and anything in the body of the act outside of these is void."

By reciting that T.C.A., § 59-423 is amended "by extending the provisions concerning the issuance and use of special licenses based on zones of operation to private carriers," Chapter 765, of the Public Acts of 1976, unquestionably specifies the amendment to be made to Section 59-423 of the Code. Omitted from the caption, although included in the body of the Act, is the means by which the limitation on the privilege to operate vehicles with less expensive zone tags is to be enforced.

Omission from the title of an act of the means or instrumentalities for accomplish-

ing the purposes of that Act is, however, a generally recognized exception to the requirement found in many state constitutions that the subject of an act must be expressed in its title. See 73 *Am.Jur.2d* Statutes § 119 (1974). Interpreting Article II, Section 17 of the Tennessee Constitution, this Court stated in *State v. Brown*, 103 Tenn. 449, 456, 53 S.W. 727, 728–29 (1899):

> "It was not essential that the title be made an index or epitome of the Act, nor that it should set forth the modes, means, or instrumentalities provided in the Act for its administration and enforcement."

See also *Williams v. Mabry*, 176 Tenn. 343, 141 S.W.2d 481 (1940); *Tenn. Elec. Power Co. v. Mayor and Aldermen of Fayetteville*, 173 Tenn. 111, 114 S.W.2d 811 (1938); *Southern Photo and Blue Print Co. v. Gore*, 173 Tenn. 69, 114 S.W.2d 796 (1938); *Lamb v. Whitaker*, 171 Tenn. 485, 105 S.W.2d 105 (1937); *Texas Co. v. Fort*, 168 Tenn. 679, 80 S.W.2d 658 (1935); *Hunter v. Conner*, 152 Tenn. 258, 277 S.W. 71 (1926); *Petty v. Phoenix Cotton Oil Co.*, 150 Tenn. 292, 264 S.W. 353 (1924); *Couch v. State*, 140 Tenn. 156, 203 S.W. 831 (1918); *Riggins v. Tyler*, 134 Tenn. 577, 184 S.W. 860 (1916); *Palmer v. Southern Exp. Co.*, 129 Tenn. 116, 165 S.W. 236 (1914).

While most of the above-cited cases consider the constitutional requirements of Article II, Section 17 as they relate to general titles, *Texas Co. v. Fort, supra*, involved a constitutional attack upon the caption of an act that specified the amendments to be made to the State's gasoline tax laws. The caption of the amendatory act read:

> "AN ACT to amend Sections 1126 * * of the Code of Tennessee, 1932; said sections of the Code relating to the Gasoline Tax Laws, providing for an improved method of assessing and collecting said gasoline taxes and to strengthen the enforcement of said laws . . . ."

Taxpayers insisted that the language of the caption was restrictive and should not be construed to refer to "storing" of gasoline, which they alleged was a new and indepen-

dent subject of taxation. The Court disagreed, reasoning that the title of the amendment to the cited Code section gave notice of a purpose to change and improve the method of assessing, imposing and levying state gasoline taxes so as to strengthen the enforcement of the law set forth in the Code section cited. "Having called attention to the particular form of privilege taxation to be dealt with," stated the Court, "it was necessary only to indicate the object aimed at by the amendment." *Texas Co., supra*, 80 S.W.2d at 660. Rejecting the taxpayer's constitutional attack, the Court declared:

> "The title discloses the result aimed at; the method is for the body of the act. The 'subject' only is called for in the title, not the story; the purpose to do a certain thing, not just how it is to be done." *Id.*

Similarly, we reject taxpayers' challenge to Chapter 765 of the Public Acts of 1976 and hold that regardless of the form of the caption, general or specific, Article II, Section 17 of the Tennessee Constitution is satisfied when the constituent means embraced in the body of the act have a proper relation to the subject expressed in the caption or tend to accomplish the purpose indicated by the caption. Whatever means or instrumentalities are necessary or usual and proper for effectuating the purpose of an act may be provided therein.

Where, as in the instant case, a legislative amendment provides an exception to the general licensing laws and the caption of the amendatory act reflects the purpose of that act, the specific means chosen to effect the legislative purpose need not be set forth in the caption, although provided for in the body of the act.

We are not unmindful of our recent holding in *Farris v. State*, 535 S.W.2d 608 (Tenn.1976). The holding in *Farris* does not conflict with *Texas Co. v. Fort*, nor does it compel a contrary conclusion in the present case. In *Farris* the caption spoke only of an amendment "relative to verdict and sen-

tence in felony conviction," whereas the body of the act required that the trial judge charge the jury on parole considerations, a matter that the *Farris* majority felt not to be germane to the subject of the amended or the amendatory act. In *Texas Co. v. Fort*, the amended acts measured the gasoline tax by the amount stored, whereas, the amendatory act based it upon the amount withdrawn from storage. Accordingly, the Court, in *Texas Co. v. Fort*, held that "[t]he title discloses the result aimed at; the method is for the body of the act." A wholly different situation was presented in *Farris*.

Accordingly, we hold that Chapter 765 of the Public Acts of 1976 is constitutional as enacted.

### III

In addition, taxpayers challenge the State's imposition of the 20% penalty provided by T.C.A., § 59–514, for violation of the gross weight limitation set forth in T.C.A., § 59–1109(C). They insist that the 20% penalty is not applicable to freight motor vehicles operating with zone tags. The Chancellor upheld taxpayers' position. We agree.

Our comparison of T.C.A., § 59–423(G), the statute authorizing zone tags, with T.C.A., § 59–414, convinces us that the legislature did not intend that the 20% penalty of § 59–514 should apply to overweight freight motor vehicles operating with special zone licenses authorized by T.C.A., § 59–423(G). In our opinion, the re-registration requirement and *two* year prohibition against special licensing provided by § 59–423(G) was intended to be the exclusive penalty for such licensees. Those sanctions are in direct conflict with the provision of § 59–514 that violators of the gross weight limitation:

"   .   .   shall be compelled to register such motor vehicle in the class within which its then weight shall fall, which registration shall be taken for a period of one (1) year, or such lesser period as the vehicle may have been operated in a manner subject to registration in this state .   .   . ."

Any doubt as to the applicability of a penalty must, according to the well-established principle of construction, be resolved in favor of the taxpayer. See *Union & Planters Bank & Trust Co. v. Fort*, 170 Tenn. 285, 95 S.W.2d 39 (1936).

Accordingly, the cause is remanded to the Chancery Court for modification of the decree in accordance with the views stated in this opinion. The judgment in favor of Phillips is reduced by $1,700.25 to the sum of $339.00. The judgment in favor of Pennington is reduced by $1,133.00 to the sum of $226.00.

Costs to be divided equally between appellant and appellees.

COOPER, C. J., and FONES, HENRY and HARBISON, JJ., concur.