RESPONSE TO APPLICATION FOR REHEARING FILED BY DEFENDANT-APPELLEE
PER CURIAM.
The defendant-appellee has filed an application for rehearing dated February 23, *890 1987, requesting a five-judge panel claiming “the increase in the award to inter-venor together with the dissenting opinion should make the resubmission or reargument of this matter before a panel of at least five (5) judges mandatory.” We deny this rehearing.
A brief synopsis of our opinion dated February 9, 1987 shows that the plaintiff-employee sued a third party tortfeasor for injuries sustained in an auto accident occurring while acting during the course and scope of his employment. The employer’s compensation carrier intervened for sums paid to the employee. The employee and third party defendant settled just prior to trial without the consent of the insurer. The intervention was set for trial by the district court, which found, after a trial on the merits, that the defendant-tortfeasor was liable for only one-half the plaintiff’s injuries ($30,000), the other half resulting from a strain on the job days after the auto accident. On intervenor’s appeal, two panel members found that the medical expert testimony concluded the auto accident was the cause of the employee’s ultimate disability, and the stretcher-pushing strain only an aggravation or natural result of the first accident. Accordingly, the tort-feasor was deemed totally liable for all compensation paid; therefore, the inter-venor-carrier was awarded the entire amount, the sum of $62,558.45. Our decree amended the amount recovered and affirmed the judgment as amended. Our judgment was further amended to include interest erroneously denied by the trial court.
One panel member dissented, finding no error in the trial court’s 50-50 apportionment of the cause of the ultimate disability. Nonetheless, he agreed to amending the judgment to include interest.
ANALYSIS
Rule 1-5 states, in part: “In civil appeals, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued or resubmitted before a panel of at least 5 judges, a majority of whom shall render judgment.” (emphasis supplied) This rule is obviously an adaptation of the La. Const, of 1974 art. V, § 8(B), which provides, in part:
A majority of the judges sitting in a case must concur to render judgment. However, in civil matters only, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment.
The possibility of mandatory five-judge panels in any disposition other than an affirmance is certainly evident from a literal reading of our court rules and state constitution.
Justice Marcus has stated that the constitutional provision is clear insofar as it applies to both final and interlocutory judgments considered under either our appellate supervisory jurisdiction. Bank of New Orleans and Trust Co. v. Seavey, 383 So.2d 354 (La.1980). While he is no doubt correct in his analysis, such an analysis would beg the question in determining the meaning of “modified or reversed” in the provision. Other cases available on this issue involve:
(1) instances wherein the judgment is “amended and affirmed” and the dissent applies only to the “affirmed” portion of the judgment, Speirer v. McIntosh, 342 So.2d 238 (La.App. 4th Cir.1977); Welton v. Falcon, 341 So.2d 564 (La.App. 4th Cir.1976), writs denied, 342 So.2d 872, 1109 (La.1977);
(2) cases wherein the dissent agrees with the modification but would further modify the award, State Dep’t of Highways v. Mims, 336 So.2d 24 (La.App. 3d Cir.1976), writ denied, 339 So.2d 16 (La.1976); and
(3) situations where the award is amended and the judgment affirmed by two judges, and the dissenting opinion finds no liability whatsoever, and therefore would make no award, Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir.1983), writ not considered, 437 So.2d 1135 (La.1983); Villetto v. Weilbaecher, 377 So.2d 132 (La.App. 4th Cir.1979); Brown v. Employers Commercial Union Ins. Co., *891 316 So.2d 194 (La.App. 4th Cir.1975), writ denied, 320 So.2d 204 (La.1975). While these cases provide some insight, none are directly applicable to the circumstances at hand.
We note La.C.C.P. art. 2082 grants the “right of a party to have a judgment of a trial court revised[1], modified[2], set aside, or reversed by an appellate court.” In its wisdom, the legislature apparently found some difference between a “revision” and a “modification.” The term “amended ”[3] is not included in this list of possible dispositions, and neither is “affirmed” nor “remanded” (See La.C.C.P. art. 2082 Comment (d); La.C.C.P. art. 2164, Comment (d).) If the enumerated dispositions in art. 2082 are not meant to be exclusive, it suggests that “amended,” although certainly akin to the terms “revised” and “modified,” is nonetheless a separate disposition. Accordingly, to “amend” a judgment would not make the appeal subject to Rule 1-5 and La. Const, art. V § 8(B) because technically we have neither “modified” nor “reversed” the lower court judgment.
This semantic exercise aside, an inquiry into the choice of language in La. Const, art. V § 8(B) leads to Vol. VI, p. 756 of the transcripts from the Constitutional Convention.[4] Therein, Delegate Chris J. Roy explained § 8(B) upon its presentation to the delegates.[5] In the debate over the article *892 on the floor of the Convention, only reversal” is discussed in considering the effect of the article.
In light of the jurisprudence and the delegates’ discussion, we find that the term “modified” contemplates a change in the judgment which would constitute a reversal. In other words, a “modification” is a change which is tantamount to reversal as a practical matter.
Bearing in mind our state constitution, our court rules, our statutory law, and our jurisprudential guidelines, we find the changes of the trial court’s judgment in our decree constitute a correction of the trial court’s misinterpretation of the medical testimony, thereby defining a specific revision. Additionally, this Circuit, as a matter of policy, has decided that the majority of each panel determines the state of any “change” in the trial court’s judgment in accordance with its vested authority.
APPLICATION FOR REHEARING DENIED.

. "Revise" is defined in Black’s Law Dictionary as "To review and re-examine for correction. To go over a thing for the purpose of amending, correcting, rearranging, or otherwise improving it; as, to revise statutes, or a judgment. State ex rel. Taylor v. Scofield, 184 Wash. 250, 50 P.2d 896, 897.”
“Revise” is defined in The Compact Edition of the Oxford English Dictionary as "To look again or repeatedly at, to look back or meditate on, something....” “To see or behold, to look at, again...." "To look or read carefully over, with a view to improving or correcting_”

. "Modified" is discussed in Comment (b);
The word “modified”, which does not appear in Arts. 556 or 564 of the 1870 Code, was added in order to make it clear that revision could entail an extension as well as a limitation of the judgment. See “modify” in Black’s Law Dictionary, citing State v. Lincoln, 133 Minn. 178, 158 N.W. 50, 52 (1916); U.S. v. Felder, 13 F.2d 527, 528 (D.C.Cir.1926).
"Modify” is defined in Black ⅛ Law Dictionary as "To alter; to change in incidental or subordinate features; enlarge, extend; amend; limit, reduce. Such alteration or change may be characterized, in quantitative sense, as either an increase or decrease. Johnson v. Three Bays Properties No. 2, Inc., Fla.App., 159 So.2d 924, 926.”
"Modify” is defined in The Compact Edition of the Oxford English Dictionary as "To limit, restrain, keep within bounds and measure_” "To appease, assuage....” "To control one’s feelings_" “To alter in the direction of moderation or lenity; to make less severe, rigorous, or decided; to qualify, tone down, moderate....” "To determine (a substance or other entity) into a particular ‘mode’ or modes; to give (an object) its particular modality or form of being....” “To make partial changes in; to change (an object) in respect of some of its qualities; to alter or vary without radical transformation. ...”

. "Amend” is defined in Black’s Law Dictionary as “To improve. To change for the better by removing defects or faults. To change, correct, revise. Texas Co. v. Fort, 168 Tenn. 679, 80 S.W.2d 658, 660.”
"Amend” is defined in The Compact Edition of the Oxford English Dictionary as “To free (a person) from faults, correct, reform, turn from wrong, convert_’’ "To free (a thing) from faults, correct (what is faulty), rectify_” “To make professed improvements in (a measure before Parliament); formally, to alter in detail, though practically it may be to alter its principle, so as to thwart it....’’ "To repair or make good (what is broken or damaged); to re-store_’’ "To bring into a better state, better, improve (anything implicitly imperfect)....’’

. The Constitution of 1921 makes no mention of modification or reversal. See art. VII § 23 and § 26.

. If two of the three judges sitting on the panel, you understand, decide that they disagree with the district judge even though they haven’t heard the witnesses, saw them testify, etc. and all these good things that you don’t want to reverse district judges for, they may nevertheless vote two to one against a dissenting judge who says that the case should not be reversed or modified. When that occurs, the present rules of the courts are that if you apply for a rehearing, the rehearing goes back to the same panel that heard the case. So what happens, the two judges that already decided against you and reversed the district judge naturally deny the rehearing.
Now what does my amendment do? ... It simply says this. When a case goes up to a court of appeal and when you are going to reverse the district judge or modify its opinion, then if there is one dissent of the three who says that it should not be done, that you should not *892 reverse this district judge, at that time instead of rendering the opinion, the parties are entitled to a reargument before at least five judges of that appellate court. In other words they call in two additional judges, the case is reargued. If at that time a majority decides that you should in fact be reversed, you are reversed. If not, you are not reversed. Now let me show you what can happen as a result of the present circumstance. Since the courts of appeal sit in rotating panels of three, never the same three judges at the same time, we are getting out of the same court of appeal sometimes different results in almost identical cases. That is compounded when you think of the fourth circuit having nine judges and they sit in panels of three. You can get out of the same court of appeal two different results from the same type case. I think this is a very, very good amendment. What it does is, it allows the verdict, the judgment of that district judge to be entitled to a little more weight than it’s got now. As you see right now you can simply disagree with the district judge, two judges reversing, and that is the end of it. That’s the finis of it.
All I am saying today is that no two judges on an appellate court who read a cold record should be able to take what a district judge has done after hearing a case for three days and subvert it by simply outvoting another judge. It does not do anything except, and this is the argument against it, it makes some appellate judges, if they have to reargue the case, you have to call in two more appellate judges and two more will have to read the record.
I think" that'in the interest of justice, it is not too much to ask an appellate court to have two more judges come in and read a record where one judge vehemently dissents and says you have done the wrong thing by reversing this district judge. Let’s seek justice. Justice delayed may be justice denied. Justice denied is justice denied and when two judges can take a district court and reverse it simply almost on a whim, that is not justice in my judgment.
All I am saying is that yesterday you said that the more people you have looking at a record the better chance that justice will prevail. I have to agree with that although I didn’t want it to be reviewed. If we are going to review then let’s have as many possible which doesn't impede the efficient operation of the court look at it. That’s all this amendment does. It say that when two decide to reverse one, and to reverse that district judge, it must be reviewed by at least five.