WALDIE *v*. STATE.

(*Knoxville*, September Term, 1949.)

(May Session, 1950.)

Opinion filed June 9, 1950.

E. B. BAKER and MALCOLM McLEAN, both of Chattanooga, for plaintiff in error.

J. MALCOLM SHULL, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

Waldie was indicted, tried and convicted for the homicide of Herbert Martin. The conviction was for murder in the first degree with punishment fixed at death by electrocution. He has seasonably appealed.

On the day of the homicide the deceased, a construction foreman, and a fellow employee drove from Atlanta, Georgia, to Chattanooga preparatory to doing some work there. They arrived in Chattanooga at about 4:45 o'clock P. M., registered at a hotel, washed up and ate supper. After supper they met two girls on the street, prostitutes, who asked these men to buy them a sandwich. After the sandwich and drinking beer, whiskey was purchased and the four, at the suggestion of the girls, got a taxi and went to a houseboat where there was dancing, gambling, and liquor being sold, etc. Soon after they got there the deceased got into a dice game, the boat had a room and a specially constructed table for the purpose, with the plaintiff in error.

According to the State's proof which the jury accredited, it certainly seems the most credible, the plaintiff in error had made his point twice and won $15 from the deceased, the $15 being due from a $20 bill of the deceased. Apparently at this point the deceased questioned the dice, that is, whether or not they were straight.

One witness says: "it looked like the dice wouldn't turn, just went on a level." An argument ensued. The evidence is in conflict as to just what was said and happened. Just before the fatal shot was fired the plaintiff in error said: "If you don't pay me, I will shoot you," says one State's witness. The plaintiff in error then shot the deceased in the neck. The bullet cut the jugular vein ranging down coming out between the sixth and seventh ribs on the right side of the back.

The principal insistence of the defense is, and that primarily stressed in the oral argument, that the evidence preponderates against the guilt of the plaintiff in error of murder in the first degree—that the evidence does not warrant a conviction in excess of murder in the second degree.

The plaintiff in error did not take the stand at this trial. There is filed with the record, as an exhibit to the motion for a new trial, a transcript of the evidence taken at a previous trial where the plaintiff in error did testify. It is apparent, from reading this transcript of the defendant's testimony at the other trial, why he was not put on again. Practically all his life, since he was 17 years old, he has been in prison. His father and mother traveled the country with a carnival—his mother operated a shooting gallery. This record shows that the plaintiff in error was convicted of armed robbery soon after he was 17—he was 29 at the present trial. Of course, none of what is said in this paragraph has anything to do with the instant case but it is in the record and must necessarily form part of the background. The purpose of filing the transcript of the other trial was to show that the district attorney gained certain information there which he allegedly used in the instant case by way of prejudicial argument to the jury.

As to whether or not the evidence is sufficient to sustain the verdict "the State necessarily concedes that the question thus presented is a close one." The State argues: "The evidence in this case warrants the conclusion that the plaintiff in error was using loaded dice and that he had armed himself for the purpose of preventing interference by anyone with his unlawful and dishonest enterprise. 'Generally, it may be said that one who enters on the commission of a wrongful act, and, contemplating that another may interfere with his enterprise, arms himself with a deadly weapon with intent to take the life of that other should it become necessary to save his own in the course of such interference, and in fact does take the life of the interferer, in pursuance of such intent, is guilty of murder in the first degree. ' "

The State then, after quoting from the case upon which the above quotation from American Jurisprudence is based, says: "Upon the facts of the case there appears no room for doubt that the killing was premeditated and intentional. The serious question which arises is whether the design to kill was formed in passion, for it will be conceded that, if so, no time elapsed in which the passion could subside. This conviction of murder in the first degree could be sustained, under the authorities above discussed, on the theory, which seems to be true, that the plaintiff in error intended, and prepared himself, to kill anyone who might endeavor to discover or interrupt his crooked gambling. If this be accepted as the true version of the facts, conviction of murder in the first degree is warranted. If, on the other hand, it should be concluded that during the course of the gambling an argument arose between the participants in the course of which the design to kill was formed, the offense is murder in the second degree."

 This very fine, fair and frank brief of the State clearly analyzes the situation in the instant case. As to whether or not the requisite amount of premeditation is present depends upon the facts and circumstances of each case—the character of the individual involved, whether he is old, slow to anger or quick, his training, background etc., must all be considered in making up one's mind as to the question.

 The facts presented by this record clearly make out a case of murder in the second degree. We are not satisfied, though, that these facts support murder in the first degree. We do not think, without more and that is all there is here, that the mere fact that the plaintiff in error had a pistol would warrant our finding that he had this pistol for the purpose of taking anyone's life who interfered with his gambling activities. Insofar as this record shows the plaintiff in error was a mere patron of this house boat as was the deceased. Some of the witnesses do say he seemed to be running the game. This boat was an obvious den of iniquity of the worst sort. Obviously he was too quick on the trigger. The deceased was drinking. There is evidence of an argument in the course of which we conclude the design to kill was formed.

The closing argument of the District Attorney General to the jury was made a part of the record. Portions of this argument were objected and are assigned as error. We have carefully read the entire argument. Most of it is warranted by the record. Some instances are broader than the record. On the whole we cannot see that the argument is prejudicial. At least by our action herein we have cured any possible error by reason of this argument.

542

■ The plaintiff in error fled the State immediately after committing the crime of which he is charged. Ordinarily this is a circumstance regarded as inconsistent with innocence, but consistent with guilt. *Brown* v. *State,* 186 Tenn. 378, 388, 210 S. W. (2d) 670. This presumption has no weight in determining the degree of homicide of which he is guilty. The background of the individual who flees should be considered, considering that of the individual here involved, this presumption in effect fades away.

For the reasons expressed we must overrule all assignments of error except that going to the degree of the crime of which the plaintiff in error was convicted. In conformity with the view herein expressed the judgment is corrected so as to fix the term of the plaintiff in error's imprisonment in the penitentiary at the minimum provided by law for murder in the second degree. The reasons and authority for so doing are ably and fully set out in *Forsha* v. *State,* 183 Tenn. 604, 194 S. W. (2d) 463.

All concur.