James E. FARRIS, Petitioner,

v.

STATE of Tennessee, Respondent.

William Wayne ROBINSON, Petitioner,

v.

STATE of Tennessee, Respondent.

Roosevelt LEWIS, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Feb. 16, 1976.
On Rehearing March 30, 1976.

Stafford Hagwood, Nashville, for Farris.

Walker Gwinn, Memphis, for Robinson and Lewis.

Etrula Trotter, Asst. Atty. Gen., Nashville, for Farris and Robinson.

William J. Haynes, Asst. Atty. Gen., Nashville, for Lewis; Ray A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

HENRY, Justice.

The principal issue in these cases is the validity of § 2 of Chapter 163 of the Public Acts of 1973, which appears in § 40–2707 T.C.A. as the last paragraph thereof, and which reads as follows:

> It shall be the further duty of the trial judge charging jurors in cases of criminal prosecutions for felony offenses to charge the said jury as to the provisions of this section and as to the provisions of §§ 40– 3612, 40–3613, 41–332 and 41–334, wherever applicable.

Both the trial court and the Court of Criminal Appeals upheld this section.

We affirm the *James E. Farris* case for the reason that Farris did not assign error in this Court directed to this portion of the statute.

The remaining defendants charged the trial court with error in charging the jury as to parole eligibility. This opinion is concerned with these two cases.

### I.

The effect of the 1973 amendment is to require that trial judges, in criminal cases (with the exceptions noted in the statute), charge the jury with respect to parole eligibility, certain powers and duties of the Board of Pardons and Paroles, good behavior allowances, and the allowance of honor time. There is no requirement that the jury be charged as to the loss of honor time. (See § 41–335 T.C.A.).

The Court of Criminal Appeals passed upon and sustained the constitutionality of so much of Section 40–2707, T.C.A. as requires that the jury fix the minimum and maximum term, in the cases of *Sharp v. State*, 513 S.W.2d 189 (Tenn.Cr.App.1974), and *Halpin v. State*, 515 S.W.2d 658 (Tenn. Cr.App.1974). This is true; however, in these cases, no attack was made upon so much of the statute as requires that the judge charge as to the aforementioned parole considerations.

In *Sharp*, the Court of Criminal Appeals, speaking through Judge Galbreath, sustained Chapter 163 of the Public Acts of 1973 in the face of a challenge asserting that the Legislature invaded the province of the Judicial Branch of the government; however, that case did not touch upon the issue here presented.

In *Halpin*, the Court of Criminal Appeals had under consideration an assignment which read as follows:

> The Trial Judge erred in charging the jury regarding the doubling of the minimum sentence, said charge being based

on an unconstitutional statute. 515 S.W.2d at 660.

The opinion copies Section 1 of the act, as it then existed, in its entirety, but stops short of Section 2, which is involved in the instant case. The court held in clear and unequivocal language:

> We do not think the defendants have any standing to attack the validity of this statute because they have not been adversely affected by it. 515 S.W.2d at 662.

This statement operates to render as dictum the holding of the Court of Criminal Appeals, as to the constitutionality of the statute, moreover, this holding has no relation to the issue here under consideration.

In summary, as to the precise question herein involved, we address a matter of first impression. We are not, however, handicapped by lack of analogous precedent.

### II.

Article II, Section 17 of the Constitution of the State of Tennessee provides, in pertinent part, as follows:

> No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts, which repeal, revive or amend former laws, shall recite in their caption or otherwise, the title or substance of the law repealed, revived or amended.

The purpose of this constitutional provision is to assure that members of the Legislature and the *public* be given notice of legislative proposals and to prevent surprise and fraud in enactments. *State v. Hailey*, 505 S.W.2d 712 (Tenn.1974).

Before discussing the precedents which in our view compel the conclusion that this Act is broader than its caption, it is necessary and proper that we consider the background of Section 40–2707 T.C.A.

The Indeterminate Sentence Law originated with Section 1 of Chapter 8 of the Public Acts of 1913, which provided in substance for sentences to an indefinite period not to exceed the maximum nor minimum term with allowances being made for good time and with the proviso that the person sentenced would be subject to release or parole and to final discharge by the Board of Pardons and Paroles, along with certain other provisions not here material. It is pertinent to observe that this section made absolutely no reference to the substance of any charge to be given to the jury.

This section was amended by Chapter 52 of the Public Acts of 1923 and as amended appears as § 40–2707 T.C.A.

The caption of Chapter 52 provided:

> An act to be entitled an act to amend Section 1 of Chapter 8 of the Public Acts of 1913, so as to provide for the verdict of the jury to fix the maximum term in cases where maximum and minimum term is provided by law.

The body of the Act simply provides that the jury would fix the maximum term of the convicted defendant, would return a verdict in the form set forth in the amendment and would require that the trial judge in imposing judgment not fix a definite term but would sentence such person to the penitentiary for a period of not more than the term fixed by the jury, making an allowance for good time as now provided by law.

Again nothing in the caption or body of Chapter 52 of the Public Acts of 1923 even hints at any charge to be given to the jury.

Then came Chapter 163 of the Public Acts of 1973, the caption of which reads as follows:

> An act to amend Section 40–2707 Tennessee Code Annotated, relative to *verdict and sentence* on felony conviction. (Emphasis supplied).

There is nothing whatsoever about this caption to alert any legislator or any interested citizen that tucked away into the Act would be a requirement that the judge charge the jury on parole considerations. All remaining portions of the Act relate to "verdict and sentence" as the caption said it would, but again the action was wholly and utterly silent on the charge to the jury.

Chief Justice Grafton Green indelibly established the law of this State relative to the unconstitutionality of acts containing matter not within the scope of their captions in *Hays v. Federal Chemical Company,* 151 Tenn. 169, 268 S.W. 883 (1925). Judge Green stated:

While conceding that it is not necessary for the title of an amendatory act to set out the amendments proposed to be made, if such amendments fall within the title of the original act, we think, when the title of the amendatory act does *specify the particulars* in which the original act is to be amended, the body of the amending act should not contain other matters. Any other rule would be unsafe. If the title of an amending act merely indicates generally that amendments of the original act are to be made, then it rests upon all those affected by the original act to investigate, and see in what respects the original act is to be changed. If the title of the amending act, on the contrary, sets out the particular amendments that are to be made to the original act, it may be reasonably concluded that no amendments other than those stated are to be attempted. *It would promote deception, if, under a caption undertaking to specify amendments to be made, other and different amendments were included in the body of the act.* (Emphasis supplied). 151 Tenn. at 175, 268 S.W. at 384.

■ This was a case of first impression in 1924 but it established the law in Tennessee and it is upon this case that we base this portion of this opinion, feeling as did Judge Green, that if this act had simply stated that it was an act to amend § 40–2707 Tennessee Code Annotated, this would have been sufficient as legislators and concerned citizens would have been put on inquiry. But where the caption goes further and specifies "verdict and sentence" it falls within the prohibition laid down by Judge Green in *Hays* and any portion of the act beyond this subject and not relating to verdict or sentence is wholly and utterly void. Nor can we cure the defect by saying that it is germane. The charge of the jury is no more germane to verdict and sentence than is the indictment, the voir dire examination of the jury, the opening statement, the closing arguments or any of the other stages during the progress of a criminal trial.

In *Tennessee Electric Power Co. v. City of Chattanooga,* 172 Tenn. 505, 114 S.W.2d 441 (1937), this Court speaking through Mr. Justice DeHaven, stated:

A statute reciting the title or substance of a former law and expressly purporting to amend same need not indicate the particular and specific character of the amendment, if the amendment is germane to and *embraced in the subject expressed in the original act.* (citing cases). However, where the title of the amendatory act recites the title of the act to be amended and also *specifies the amendments to be made,* the *legislation is thereby limited to the amendment specified and anything in the body of the act outside of these is void.* (Emphasis supplied). 172 Tenn. at 517, 114 S.W.2d at 445.

In *Armistead et al. v. Karsch et al.,* 192 Tenn. 137, 237 S.W.2d 960 (1951), this Court said:

When the Legislature is presented with a caption which says that it is to amend another Act of the Legislature, of course, the Legislature and those interested have notice of what this other Act is because it is in force and spread on the books, but when this amendatory Act goes further and says that the amendment is only to *cover certain specified things this is telling the Legislature that now the sign is pointing out to you a certain specific place or direction and that only such specific things will be done by this amendment.* (Emphasis supplied). 192 Tenn. at 142, 237 S.W.2d at 962.

The Idaho Supreme Court has passed on this precise matter. In *Hammond v. Bingham,* 83 Idaho 314, 362 P.2d 1078 (1961), it said:

In addition to the title stating that I C, § 33–909 is being amended, it proceeds to particularize some, *but not all,* of the

changes . . . When such specifications are made the legislation is *limited to the matters specified and anything beyond them is void, however germane it may be to the subject of the original act.* (Emphasis supplied). 362 P.2d at 1081, 1082.

The Alabama Supreme Court has held the rule to be that the title of an act which merely purports to amend certain sections of the Code cannot add a new and different subject. *Clutts v. Jefferson County Board of Zoning Adjustment,* 282 Ala. 204, 210 So.2d 679 (1968).

The Wyoming Supreme Court, in *Smith v. Hansen,* 386 P.2d 98 (Wyo.1963) stated the rule thusly:

On the other hand, we consider the following cases authority for the holding that when a title particularizes the changes which are to be made in an amendatory act, the legislation is limited to matters specified, and anything beyond this limitation would be void regardless of how germane it might be to the subject of the original act. (citing cases from ten jurisdictions, including *Hays,* supra). 386 P.2d at 101.

In 73 Am.Jur.2d Statutes, § 130, it is stated:

Of course, an act to amend a section of a previous act which contains subjects not expressed in the title of either the amending act or the original act is unconstitutional.

In § 133, of the same treatise, it is said:

Moreover, a single statute amendatory of a code may amend some sections, repeal others, and add new sections, provided the act as amended is such as might have been validly enacted in the first instance under the title given the original code or other statute.

Again, the provision with which we deal directing that the trial judge charge on parole eligibility, etc., is not reflected in the 1913 act, body or caption; the 1923 act, body or caption, or in § 40–2707 as it appears in the main body of Tennessee Code Annotated. This being true, we see no escape from the conclusion that this section must be declared to be invalid.

We are cited to *Woods v. State,* 130 Tenn. 100, 104, 169 S.W. 558 (1914), dealing with the original indeterminate sentence law, wherein the constitutionality of the act was sustained. We are in wholehearted accord with the *Woods* decision but, with utmost deference, we do not see its application to this case.

Reliance is also placed upon *Pharr v. Nashville, C. & St. L. Ry.,* 186 Tenn. 154, 208 S.W.2d 1013 (1948) which holds in substance that "(w)hen any section of the official Code is amended the members of the Legislature are presumed to know the nature of the section sought to be amended". With this statement we find no fault, but it most assuredly has no application were new matter is injected. Moreover, the Legislature and the public had the right to assume that the amendatory statute would do what its caption stated it would do.

Reliance is also placed on *Basham v. Southeastern Motor Truck Lines, Inc.,* 184 Tenn. 532, 201 S.W.2d 678 (1947), wherein the Court also had under consideration the caption of an act which simply stated that a particular Code section was being amended. The Court very properly held that a reference in the caption to the section of the Code proposed to be amended is sufficient to comply with the requirements of Section 17, Article II of the Constitution of Tennessee. This would be true had the reference been to the section, without more. Legislators and citizens then would have been put upon inquiry; but where the caption goes further and specifies the nature of the amendments by adding the words "relative to the verdict and sentence on felony convictions", all concerned had a right to assume that this is precisely what the amendatory act did. Such was not the case, however, and this makes this portion of the statute wholly and utterly void as being broader than its caption.

### III.

We further hold that Section 2 of Chapter 163 of the Public Acts of 1973

requiring that trial judges charge juries in felony cases on the parole procedure and allied matters is impermissibly vague and impossible to apply. Jurors of reasonable or common understanding and intelligence are not capable of understanding the various ramifications of the parole system. We submit that there are few practicing attorneys, otherwise knowledgeable in criminal law, or judges at any level, who have a complete understanding of these matters. Only the Records Clerk at the state penitentiary, and the convict population are knowledgeable in this highly specialized area. The law is a paradox on its face. When the statutes involved are read they serve only to suggest that at some future date the defendant will be the beneficiary of a parole. This law proceeds upon the assumption that jurors, in a necessarily brief charge, can be made to understand a law which is notoriously complex.

We have checked the charge given by the trial judges in these cases. In each instance he charged the exact terms of each statute, without comment. We have read each charge, aloud and slowly, and find that this requires approximately four minutes—four minutes for twelve laymen to understand this technical and confusing statute. And yet we expect jurors to understand this statutory scheme and apply it to a defendant's liberty based on just four minutes of oral instruction, and a written copy of the charge taken to the jury room, which may or may not be read and which, we submit, is beyond the understanding of the average jury.

A proper consideration of parole eligibility involves, as a minimum, an analysis of regular parole, probationary parole and mandatory parole. It involves a starting point with a "flat release" date, determined by taking the maximum terms of the sentence and deducting therefrom all good time and honor credits. Assuming an indeterminate sentence of not less than five or more than ten years, the "flat time" is six years and one month.[1] To compute parole eligibility the jury must take the minimum term of five years or 60 months, and deduct the good and honor time credits on that sentence,[2] leaving a parole eligibility rate of 38 months or three years and two months. Can a jury understand this?

But this is only the beginning. The good and honor time credits are credited immediately upon the admission of the prisoner to the penitentiary. At all times thereafter they are subject to being removed in whole or in part for a violation or infraction of prison rules and regulations or if he "otherwise demean himself improperly", whatever this phrase means. (§ 41–335 T.C.A.). But the jury is not told that on an administrative basis the prisoner can lose all good and honor time. Reverting to the above example, he could lose up to 69 months and yet the jury is not told this. It is led to believe that this 69 months will not be served—assuming it can make the computation above set forth.

And then there are the "incentive"[3] credits which are compiled both on an "accrual" and "vested" basis. But these credits may also be lost as we understand the system.

Parole eligibility comes when the minimum sentence is served less all credits for good and honor time as calculated from the minimum sentence and subtracted from the minimum sentence—but his release is still discretionary with the Board of Pardons and Paroles.

It is obviously impossible for any living human being to compute, prior to verdict, how much time any prisoner will serve and yet this is precisely what trial juries are called upon to do. Otherwise, there is no

---

1. The good and honor time credit on a ten-year sentence is 47 months; on a five-year sentence is 22 months. These credits accrue at the rate of 1 month for the first year, 2 months the second year, 3 months for each subsequent year until the tenth year and four months for each succeeding year—all of which the jury must be charged.

2. *Id.*

3. These credits come from participating in an athletic or vocational program.

conceivable point to charging the jury as to these matters.

■ Jurors should not be permitted to speculate on the length of sentences, discretionary parole, the accumulation of good and honor time and a whole conglomeration of contingent events which, if they come to pass at all, will come to pass in the future. Very heavily involved is the constitutional right of a defendant to a fair trial.

This is trial "by guess and by golly", and we will not countenance it by upholding a statute which offends every sense of fairness and every precept of due process.

It tends to make a jury speculate on the length of time a convicted defendant will be required to serve and further tends to breed irresponsibility ‚ on the part of jurors premised upon the proposition that corrective action can be taken by others at a later date. A greater defect in the law stems from the fact that jurors tend to attempt to compensate for future clemency by imposing harsher sentences.

The matter of the future disposition of a convicted defendant is wholly and utterly foreign to his guilt and is not a proper consideration by a jury in determining the length of his sentence.

Chief Justice A. B. Neil, eloquently stated the case in *Graham v. State,* 202 Tenn. 423, 304 S.W.2d 622 (1957) as follows:

> The power to pardon, and/or commute a sentence of imprisonment as fixed by the jury, is foreign to the trial of any criminal case. The jury's exclusive duty to assess the punishment in all cases must be exercised fully according to the provisions of the appropriate statute and as given in charges by the trial judge. They cannot, under any circumstances, consider the power of the Governor to pardon, or the authority of the Parole Board to grant paroles. Nor can they speculate as to what this Court might do on appeal. *Gray v. State,* [191 Tenn. 526, 235 S.W.2d 20] supra. If the rule were otherwise the verdict of the jury would be mere guesswork. Moreover, in such circumstances, this Court would never be able to decide

> if the trial judge approved the verdict based on the facts, or on some unaccountable speculation as to the possibility of a reduction of the sentence by the Governor. Both the State and the defendant are entitled to a verdict that is based solely and alone upon the facts of the case and the law as given in charge by the court. Such a trial imposes upon the jury the gravest responsibility. 202 Tenn. at 426, 304 S.W.2d at 624.

We hold that Section 2 of Chapter 163 of the Public Acts of 1973, which appears as the last paragraph of Section 40–2707 T.C.A. is unconstitutional and void.

We affirm as to James E. Farris since his case is not in the posture for appellate review for the reason above pointed out.

The error which we find in the charge to the jury bears only upon the question of punishment and has no relation to the jury's finding of guilt or innocence.

To correct this error we reduce the sentence of William Wayne Robinson to three (3) to twenty-one (21) years and that of Roosevelt Lewis to five (5) to fifteen (15) years, and, as thus reduced their convictions and punishments are affirmed. These reductions are to the statutory minimum for their respective offenses. These revisions are subject to the consent of the State. If the State does not consent, their cases will be reversed and remanded for a new trial. *Hunt v. State,* 202 Tenn. 227, 303 S.W.2d 740 (1957); *Forsha v. State,* 183 Tenn. 604, 194 S.W.2d 463 (1946).

This decision will apply to these cases and to all others wherein convictions have not become final on the date of the release of this opinion. Sound considerations of public policy forbid retroactive application. The courts of this state have complied, in good faith, with the statutory mandate. No decision of this Court or of the Court of Criminal Appeals has foreshadowed the result we reach today. Orderly judicial administration is involved and we are not willing to post-review final convictions wherein this statute was charged. The drastic impact of retroactivity is obvious. We, therefore, apply this rule only to this

case and others, wherein appropriate assignments have been made, and which have not yet become final.

Affirmed as to James E. Farris; modified and affirmed as to Roosevelt Lewis and William Wayne Robinson.

FONES, C. J., concurs.

BROCK, J., concurring opinion.

HARBISON and COOPER, JJ., dissent.

BROCK, Justice (concurring).

I concur in the decision of the Court which affirms the conviction of Farris and modifies the sentences of Robinson and Lewis. I also concur in the holding of the Court that so much of Section 2 of Chapter 163 of the Public Acts of 1973 (T.C.A. § 40–2707) as purports to require trial judges in felony prosecutions to charge juries the provisions of T.C.A. §§ 40–3612, 40–3613, 41–332 and 41–334 is invalid because it is a subject not expressed in the title of Chapter 163 so that the Act violates Article II, Section 17, of the Constitution of Tennessee. But, I do not agree that Chapter 163 is unconstitutionally vague; its mandate to trial judges is plain enough. In my view, the vagueness and confusion to which Mr. Justice Henry refers relates to the instructions regarding parole eligibility, etc., which Chapter 163 would require trial judges to give to juries trying felony cases.

Further, it is my opinion that, in addition to violating Article II, Section 17, of the Constitution of Tennessee, the mandate of Chapter 163 that trial judges charge juries the statutes relating to parole eligibility, etc., also violates Article II, Sections 1, 2, of said Constitution because it amounts to an attempt by the legislature to exercise judicial powers. *Williams v. State*, 461 P.2d 997 (Okl.1969). See also *Fisher v. Dabbs*, 14 Tenn. 119; *Brown v. Haywood*, 51 Tenn. 357; *Mabry v. Baxter*, 58 Tenn. 682; *Perkins v. Scales*, 2 Shannon's Cases 235. It is the province of the judiciary to interpret the law and apply it to the facts in a case before the Court. It is properly the function of the trial judge, not the legislature, to determine which of the vast body of laws

are appropriate for the consideration of the jury in a given case. Yet, the statutory mandate of Chapter 163 amounts to a charging of the jury by the legislature, for it prescribes, word for word, the instructions to be given (the provisions of T.C.A. §§ 40–3612, 40–3613, 41–332 and 41–334) and provides that "it shall be the further duty of the trial judge . . . to charge the said jury . . . " accordingly. Thus, the trial judge merely serves as a conduit for the legislature's charge to the jury. The Oklahoma court in *Williams v. State, supra*, held a similar statutory provision of that state to be an unconstitutional attempt to exercise judicial power. I agree. For the reasons stated, I concur in the decision of the Court.

HARBISON, Justice (dissenting).

I respectfully dissent from the opinions prepared by Mr. Justice Henry and Mr. Justice Brock. In my view, the Court has departed from well-settled principles, requiring this Court to give every intendment and presumption to the validity of acts of the Legislature, and has stricken a valid criminal procedural statute in reliance upon inapposite authorities and for reasons which I cannot reconcile with sound constitutional theory.

The statute in question, Chapter 163 of the Public Acts of 1973, purported to amend a section of the official code of Tennessee, T.C.A. § 40–2707. This, in itself, distinguishes all of the cases cited by the majority with reference to the caption, for no one of those cases dealt with an amendment to officially codified law. Thus *Hays v. Federal Chemical Company*, 151 Tenn. 169, 268 S.W. 883 (1925), dealt with a lengthy caption to Chapter 84 of the Public Acts of 1923, which in turn purported to amend Chapter 123 of the Public Acts of 1919. The latter act, which was being amended, had not been codified, and the captions of both of the acts were extremely lengthy and involved. In the cases of *Tennessee Electric Power Company v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441 (1937) and *Armistead v. Karsch*, 192 Tenn. 137, 237

S.W.2d 960 (1951), private acts of the Legislature were involved, and neither of them dealt, directly or indirectly, with an amendment to the official code of Tennessee.

The majority apparently recognizes the firm and well-settled rule in this state that when the official code of the state is being amended, a simple reference in the caption to the code section involved satisfies the provisions of the Tennessee constitution in question, Article II, § 17. *Pharr v. Nashville, C. & St. L. Ry.*, 186 Tenn. 154, 208 S.W.2d 1013 (1948); *Basham v. Southeastern Motor Truck Lines, Inc.*, 184 Tenn. 532, 201 S.W.2d 678 (1947).

In the *Pharr* case, *supra*, the Court said:

"This is not a case of the Legislature adopting an amendment to a statute that is not a part of the official Code; but one amending a section of the Code that was formally adopted by an Act of the Legislature. When any section of the official Code is amended the members of the Legislature are presumed to know the nature of the section sought to be amended." 186 Tenn. at 159, 208 S.W.2d at 1015.

Likewise, in the *Basham* case, the Court said:

"That an Act which fails to comply with this constitutional requirement is invalid needs no argument, but it is well settled that a reference in the caption to the section of the Code of Tennessee proposed to be amended is sufficient to comply with the requirements of Section 17, Article 2, of the Constitution. *State v. Runnels*, 92 Tenn. 320, 21 S.W. 665; *Gamble v. State*, 159 Tenn. 446, 19 S.W.2d 279; *Texas Co. v. Fort*, 168 Tenn. 679, 80 S.W.2d 658, 659. The Code of 1932 is now the 'Official Code of the State of Tennessee.'

"Counsel argue at length, and earnestly, that such a reference is uninforming and 'fails to satisfy the purpose of the requirement, but this specific question has been too long settled to admit of further debate. In the last case above cited it was said: 'We understand counsel for appellants to concede that reference

to the sections of the Code of 1932 is a sufficient recital of the title of the act to be amended to satisfy the requirement that the amendatory act shall recite the title of the law to be amended. As said in *Gamble v. State*, 159 Tenn. 446, 19 S.W.2d 279, 280, this 'was long since decided.' *State v. Runnels*, 92 Tenn. 320, 21 S.W. 665." 184 Tenn. at 535–536, 201 S.W.2d at 680.

In the present case the caption to Chapter 163 of the Public Acts of 1973 is very brief and simple. It is:

"AN ACT to amend Section 40–2707 Tennessee Code Annotated, relative to verdict and sentence on felony conviction."

Even a casual examination of the recent acts of the General Assembly will make it clear that when the Legislature is amending an official section of the code, the words "relative to" are used in apposition to and as explanatory of the nature of the code section being amended. That is all that was done here. To me, it violates principles of grammar and syntax, as well as logic, to make the words "relative to verdict and sentence on felony convictions" into an adverbial phrase modifying the verb "amend", as the majority have done. There was no attempt on the part of the General Assembly to specify in this caption the nature or type of amendment which was being enacted, but the reference was simply to a section of the official code which was under consideration, and the words "relative to verdict and sentence on felony conviction", preceded as they are by a comma, clearly refer to the nature of the code section.

That code section did, indeed, relate to verdict and sentence in felony cases under the Tennessee Indeterminate Sentence Act, as it had been adopted by Chapter 8 of the Public Acts of 1913, and as amended by Chapter 52 of the Public Acts of 1923 and codified as T.C.A. sections 40–2707 et seq.

Had the General Assembly amended the code section in some particular manner and undertaken to specify in the caption the nature of the amendment, as by using

words "so as to provide that", then the authorities cited in the majority opinion might be apposite. That is, if the General Assembly undertook to specify the particular nature or type of an amendment being made to a code section, then conceivably the limiting principles relied upon by the majority could come into play. As stated, however, the General Assembly, as a matter of regular custom and usage, amends official sections of the code without attempting to specify the nature of the amendment, and this has always, in the past, been deemed a sufficient compliance with the requirements of the Tennessee Constitution.

With respect to the further argument contained in the majority opinion that the provisions of Section 2 of Chapter 163 of the Public Acts of 1973 are unconstitutionally vague and impossible of application, I simply cannot agree. There is absolutely no evidence in any of the records before this Court that the jury had the slightest difficulty in understanding or applying the statutes in question, and it is clear from listening to the legislative debates on this Act that the General Assembly felt it necessary and proper for jurors to be allowed to have a general understanding of parole procedures.

There had been a long line of cases in this state, as well as in other states, in which jurors had repeatedly asked questions of the trial judge as to the effect of a sentence which they had under consideration.

Prior to the enactment of Chapter 163 of the Public Acts of 1973, it was reversible error, under a number of reported cases, for the trial judge to permit the jury to consider the subject of parole, or the length of time which a convicted defendant might actually have to serve before being released. Thus, in *Graham v. State*, 202 Tenn. 423, 304 S.W.2d 622 (1957), it was held reversible error for the attorney general to read to the jury two of the code sections now required by the 1973 act to be included in the charge of the court. A comment by the trial judge that the time served by the defendant "would depend upon the good behavior of the defendant

and the attitude of the Parole Board under the indeterminate sentence law" was held reversible in *Williams v. State*, 191 Tenn. 456, 234 S.W.2d 993 (1950). See also *Keith v. State*, 218 Tenn. 395, 403 S.W.2d 758 (1966); *Hale v. State*, 198 Tenn. 461, 281 S.W.2d 51 (1955).

It is obvious from the large number of cases on the subject, however, that jurors, in discharging their function of fixing the sentence, have expressed great interest and concern about the matter of paroles and credits against sentences imposed. This has been true in other states as well. See Annot., 35 A.L.R.2d 769 (1954). It was against this background that the 1973 legislation was enacted, which expressly permitted them to fix the minimum sentence to be served by an offender, and also permitted them to receive information concerning paroles and good and honor time.

The result of Chapter 163 of the Public Acts of 1973 was simply to make it permissible for jurors to consider materials which this Court had previously deemed inappropriate for them. This, however, does not make the statute in question unconstitutionally vague or impossible of application. Whether the decision of the General Assembly was or was not a wise one, or consonant with optimum criminal procedure, is a wholly different question from the constitutionality of the statute. It is obvious that the General Assembly did not intend for the jurors to be required to go into the intricate details of the parole system, as argued at length in the majority opinion, but that it did wish them to have some general understanding of parole eligibility.

Tennessee is one of the states admitted to the Union early in the history of this country, and at a time when memories of colonial abuses were fresh in the minds of the citizenry. The Tennessee Constitution, Article I, Section 6, provides:

"That the right of trial by jury shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors."

Section 19 of Article 1 contains declarations concerning freedom of speech and of

the press, and this section concludes as follows:

"... and in all indictments for libel, the jury shall have a right to determine the law and the facts, under the direction of the court, as in other criminal cases."

In accordance with the constitutional provision just cited, a large number of cases in this state have held that in a criminal case, the jury are the exclusive judges of the facts, and that they are also the judges of the law of the case. The court is said to be the proper source of the law upon which the jurors are to draw, and in one of the leading cases the somewhat quaint phrase was used that:

"The court is a witness to them what the law is ...." *Ford v. State*, 101 Tenn. 454, 458, 47 S.W. 703, 704 (1898).

It has been held to be reversible error for the judge to instruct the jury that they could not disregard the law as he gave it to them. *Scott v. State*, 207 Tenn. 151, 338 S.W.2d 581 (1960); and it has also been held to be reversible error to instruct that the court, rather than the jury, was the judge of the law. *Dykes v. State*, 201 Tenn. 65, 296 S.W.2d 861 (1956). See also *Wright v. State*, 217 Tenn. 85, 394 S.W.2d 883 (1965); *McCandless v. Sammons*, 50 Tenn.App. 413, 362 S.W.2d 259 (1961).

Article VI, § 9, of the state constitution directs that:

"The Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

Criminal procedure in this state has, from the beginning of statehood, been prescribed by a combination of statutory provisions and judicial decisions. Both the courts and the legislature have long acted in the field of criminal procedure, to the point that it cannot with accuracy be said that either has pre-empted the subject to the exclusion of the other.[1] Thus, for more than a century, there have been provisions in the criminal code governing both the form and content of the instructions to be given by the trial judge to the jury. For example, by T.C.A. § 40–2516, having its origins as far back as 1873, there is an express provision that:

"On the trial of all felonies, every word of the judge's charge shall be reduced to writing before given to the jury, and no part of it whatever shall be delivered orally in any such case, but shall be delivered wholly in writing. Every word of the charge shall be written, and read from the writing, which shall be filed with the papers, and the jury shall take it out with them upon their retirement."

It is further prescribed in T.C.A. § 40–2517 that attorneys must make precise written requests for further instructions to the jury, and that the decisions of the judge on these instructions shall be reduced to writing and read to the jury "without (1) one word of oral comment", the statute stating that it was the intention "to prohibit judges wholly from making oral statements to juries in any case involving the liberties and lives of the citizens."

Having its origin in the Acts of 1877, Chapter 85, is T.C.A. § 40–2518, expressly making it the duty of the trial judge in charging juries in felony cases where two or more grades or classes of offense may be included in the indictment, "to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so."

Of more recent vintage, a provision of the 1971 Drug Control Act, T.C.A. § 52–1432(a)(2) expressly requires that the trial judge shall charge the jury on certain inferences which may be drawn from the amount of controlled substances possessed by an offender. In the case of *State v. Helton*, 507 S.W.2d 117 (Tenn.1974) this Court held the provisions of the statute to be mandatory and held it to be reversible error for the trial judge not to charge "the

---

1. By Chapter 376 of the Public Acts of 1975 this Court, with the aid of an Advisory Committee, has been authorized to promulgate Rules of Criminal Procedure in a manner similar to that followed in the promulgation of the present Rules of Civil Procedure. Preparation of such Rules is now in progress.

exact language" of a portion of the code section, under the facts and circumstances presented in that case.

Accordingly, there is nothing novel or extraordinary in the enactment by the General Assembly of a statutory provision governing the form or content of instructions to be given by the trial judge to the jury in criminal cases. Such statutory provisions have generally been held to be valid and imperative, rather than merely directory, although, of course there may be circumstances under which failure to comply with a statutory provision could be considered harmless rather than reversible error. See *Keith v. State*, 218 Tenn. 395, 403 S.W.2d 758 (1966).

At least since the enactment of Chapter 23 of the Public Acts of 1829, juries in the State of Tennessee have been authorized to fix punishment in felony cases, as well as to determine guilt or innocence. By Chapter 8 of the Public Acts of 1913, however, this function was taken from the jury and vested in the trial judge in all cases falling within the purview of the Indeterminate Sentence Act embodied in that chapter. Sentencing by the judge, rather than the jury, continued until 1923, when by Chapter 52 of the Public Acts of 1923 the function of fixing the time to be served under the indeterminate sentence law was returned to the jury. That law, codified as T.C.A. §§ 40–2707 et seq., as it existed prior to the 1973 amendment here under consideration, provided that in the trial of felony cases of persons over the age of eighteen years, where the punishment for the offense was set within minimum and maximum terms by statute, the jury, in addition to determining guilt or innocence, was required to "fix the maximum term of the convicted defendant". The statute contained the form of verdict to be rendered by the jury; and the trial judge, in imposing judgment, was directed not to fix a definite term of imprisonment, but to sentence the defendant to the penitentiary "for a period of not more than the term fixed by the jury, making allowance for good time as now provided by law."

In my opinion, Chapter 163 of the Public Acts of 1973 is consistent with the judicial history of this State, and simply represents a policy decision by the General Assembly contrary to that which had previously been made by the courts. So long as the jurors are the judges of the law as well as the facts, and so long as the jury has the function of fixing the sentence of one accused of crime, then in my opinion, it is within the legislative prerogative to authorize the jurors to consider parole eligibility.

In my opinion the judgment of the Court of Criminal Appeals in each of these cases should be affirmed.

I am authorized to state that Mr. Justice COOPER joins me in this dissenting opinion.

## OPINION ON PETITION TO REHEAR

HENRY, Justice.

Both the petitioner and the State have filed petitions to rehear. We respond first to the State's petition.

The State takes the position that the thrust of our opinion was to preclude the trial judge from charging Section 1 of Chapter 163 of the Public Acts of 1973. This is an erroneous interpretation of our holding. This section remains intact.

■ We dealt only with so much of Section 2 of Chapter 163 of the Public Acts of 1973 (§ 40–2707, T.C.A.) as directs that the trial judge charge the jury as to the provisions of §§ 40–3612, 40–3613, 41–332 and 41–334, T.C.A. Section 1 of the Act (first paragraph, § 40–3707) is in no way affected. This section relates to verdict and sentencing and, in no sense, does it relate to the court's charge on parole violations. It is therefore well within the limits of the caption and is germane thereto. This is clearly apparent when consideration is given to the long history of this portion of § 40–2707. See Chapter 8, Public Acts of 1913 (§ 7201–9, Thompson's 1917 Revision of Shannon's Code of Tennessee) and Chapter 52 of the Public Acts of 1923 (§ 11766, Williams' Tennessee Code of 1934).

The State also insists that the phrase "final conviction" as used in the concluding portion of the opinion is synonymous with "jury verdict." A careful reading of the phraseology used will clearly indicate that we were primarily concerned that this case not precipitate petitions for post-conviction relief. A "final conviction", as used in the main opinion, simply means those cases wherein jury verdicts have been returned but the usual appellate review, *vis a vis* post-conviction relief, has been completed.

The State's petition complains of the action taken in *State v. William Wayne Robinson* and *State v. Roosevelt Lewis*, the companion cases which were consolidated with *Farris* for the purpose of their consideration by this Court.

The thrust of the State's petition in this regard is that since the Court found that "the charge to the jury bears only upon the question of punishment and has no relation to the jury's finding of guilt or innocence", the proper relief should have been a remand "only for a determination of punishment."

We sustain the State's petition in this regard.

The first case bearing upon this question is *Corlew v. State*, 181 Tenn. 220, 180 S.W.2d 900 (1944), wherein the jury found the defendant guilty of grand larceny on evidence warranting conviction for petit larceny only, and fixed his maximum punishment at three (3) years imprisonment. The Court held that the sentence should be reduced to the minimum of one (1) year for petit larceny, provided the State consented. With respect to the State's consent and the necessity therefor, the Court said:

> [T]he State has an equal right with the defendant to have the jury fix the term of imprisonment. Since the State may feel that upon reversal and new trial a verdict might be obtained on conviction of defendant for petit larceny properly fixing his imprisonment at a longer term than the minimum of one year provided by statute, we feel that the action heretofore indicated should not be taken except upon the State's consent. 181 Tenn. at 230, 180 S.W.2d at 903.

In *Forsha v. State*, 183 Tenn. 604, 194 S.W.2d 463 (1946), the Court found that the evidence was insufficient to sustain a conviction of murder in the first degree, but that it did support a conviction for murder in the second degree. The Court accordingly "corrected" the judgment by fixing the minimum sentence for murder in the second degree.

It is the theory of both *Corlew* and *Forsha* that where the indictment embraced several offenses of different grades and the accused was convicted of the greater, the jury by its verdict, has also convicted him of all lesser offenses.

Facially, *Forsha* contains no indication that the reduced sentence was conditioned upon the consent of the State; however, a subsequent case, *State v. Odom*, 200 Tenn. 231, 292 S.W.2d 23 (1956) points out that:

> The State, in its answer to Forsha's petition to rehear, expressly approved the action of this Court in reducing the grade, and called attention to *Corlew v. State*, 181 Tenn. 220, 180 S.W.2d 900. 200 Tenn. at 234, 292 S.W.2d at 24.

In *Odom* the Court recognizes the fact that it does not affirmatively appear in *Waldie v. State*, 190 Tenn. 537, 230 S.W.2d 993 (1950), that the reduction was made on condition that the State consent. The Court then observes that "[t]he requirement of this condition is so plainly stated in *Corlew* (cit.) as to necessitate the conclusion that it was assumed in the *Waldie* case without being mentioned." 200 Tenn. at 234–35, 292 S.W.2d at 24.

In *Huffman v. State*, 200 Tenn. 487, 292 S.W.2d 738 (1956), the Advocate General, Nat Tipton, a distinguished lawyer and a recognized authority in the field of criminal law, argued to the Court that when the proof shows a defendant to be guilty of a lesser included offense than that for which he was convicted, then the Court should sustain the conviction for the lesser included offense and at the same time fix the minimum penalty under the lesser offense.

The Court concluded that the judgment should be modified and the case remanded for the purpose of having a jury fix the

punishment within the maximum as charged in the indictment.

In *Huffman*, the Court did not condition its action upon the acquiescence of the State; however, it is again pointed out that the Advocate General, representing the State, urged the Court to treat the verdict as being absolutely valid so far as it convicts the plaintiff-in-error of the offense of assault and battery, the lesser included offense. There was, therefore, no occasion for conditioning the action upon the State's approval.

*Huffman* stands as authority for the proposition that bifurcated trials are permissible under the Constitution of Tennessee since [1] "No where in this constitutional provision is it provided that the same jury that finds the man guilty must fix the punishment." 200 Tenn. at 499, 292 S.W.2d at 743.

Guidelines for the sentencing hearing wherein the only question for the consideration of the jury is the extent of the punishment are established as follows:

> Thus both sides may introduce proof as to how the assault was committed, the injuries, aggravation or mitigation, etc., so that the jury may properly fix the penalty. The trial judge should charge the jury that the plaintiff in error is guilty of assault and battery and that the fixing of the punishment is all they are to do. 200 Tenn. at 498, 292 S.W.2d at 743.

The *Huffman* guidelines are specifically approved in *Hunter v. State*, 496 S.W.2d 900 (Tenn.1972), wherein the Court reiterates that there is neither a statutory nor a constitutional prohibition against bifurcated trials.

Other cases supporting a correction or modification of a judgment and its reduction to the statutory minimum, conditioned upon the State's consent, and in its absence a remand for the fixing by a jury of a sentence within the statutory limits are *Whitsett v. State*, 201 Tenn. 317, 299 S.W.2d 2 (1957); *Hunt v. State*, 202 Tenn. 227, 303 S.W.2d 740 (1957); *Cooper v. State*, 210 Tenn. 63, 356 S.W.2d 405 (1962); *Smith v. State*, 212 Tenn. 510, 370 S.W.2d 543 (1963), and the recent case of *Smith et al. v. State*, 527 S.W.2d 737 (Tenn.1975) where this Court, speaking through Chief Justice Fones vacated the punishment set, fixed the term at the minimum sentence, subject to the consent of the State, and in the absence of the State's acceptance of the reduction, remanded for a new trial "solely on the issue of punishment, in accordance with the guidelines provided" by *Huffman*. 527 S.W.2d at 739.

■ Adhering to the principles so firmly established in these cases, and responsive to the State's well-considered petition to rehear in this regard, we recede from our original opinion in this particular, and modify it so as to provide that if the State does not consent to the reduction of the sentences of William Wayne Robinson and Roosevelt Lewis to the statutory minimum for their respective offenses, their cases will be remanded for a new trial solely on the issue of punishment, in accordance with the guidelines provided by *Huffman v. State*, 200 Tenn. 487, 292 S.W.2d 738 at 743 (1956).

All other questions raised in the State's petition to rehear were considered in the preparation of the main opinion and have been reconsidered in the light of the petition to rehear and are respectfully overruled.

Counsel for James E. Farris has also filed a petition to rehear taking the Court to task for the holding that error was not assigned on the basis of the charge to the jury on parole considerations.

> The stated ground for the petition is: Petitioner did in fact raise the same objections, assign as error, and argue the same point of law followed by this Honorable Court in modifying and/or reversing the convictions of fellow petitioners William Wayne Robinson and Roosevelt Lewis.

We quote from the petition for the writ of certiorari filed in behalf of James E. Farris as follows:

---

1. See Sec. 9 of Article 1 of the Constitution of Tennessee.

The trial court erred in instructing the jury regarding the doubling of the minimum punishment, said law which authorizes such a change (sic) is unconstitutional.

While counsel charges the Court with a "strained interpretation" of this assignment it would be both strained and strange to construe the assignment so made as being directed at any portion of § 40–2707 T.C.A. except the first paragraph thereof. This is the identical assignment made on motion for a new trial and in the Court of Criminal Appeals. Only this and nothing more.

■ This Court operates on the basis of errors assigned for our consideration and we have neither the disposition nor the duty to search the record and decide cases and controversies on the basis of unassigned error.

The petition of James E. Farris is respectfully overruled.

In order to clarify further our holding in this case we point out that the fact that a trial judge, prior to the release of our opinion, may have charged the jury on parole considerations does not necessarily mean that the error is reversible or that we will follow the *Farris* procedure. In *Rogers v. State*, 196 Tenn. 263, 265 S.W.2d 559 (1954), then Chief Justice Neil, with respect to the *Forsha* procedure said:

> But former decisions cannot be considered as a criterion or authority for thus mitigating a sentence fixed by the jury and trial court in a given case. Every case must be governed by its own facts, and a decision made according to the demands of law. 196 Tenn. at 267, 265 S.W.2d at 561.

In other words, "every tub must stand on its own bottom."

We do not intend to dilute the meaning and significance of the Court's holding in this case by these comments. Where the prohibited charge is given after the release of the main opinion, the error is reversible. The rule we announce will be applied along with all other relevant criteria in all cases arising prior to its release.

In order to correct an inadvertent error appearing in the main opinion, the sentences are reduced as follows:

William Wayne Robinson to not less than three (3) years nor more than three (3) years; Roosevelt Lewis to not less than five (5) years nor more than five (5) years.

Justices Cooper and Harbison continue to dissent from the main opinion and Justice Brock continues to adhere to the position taken in his concurring opinion; however, all members of the Court concur in the legal conclusions articulated in this opinion on the petitions to rehear.

All concur.