IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL 1997 SESSION

FILED

September 30, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9607-CR-00294 |
| Appellee, | * | DAVIDSON COUNTY |
| VS. | * | Hon. Seth W. Norman, Judge |
| DWJUAN L. BRADFORD, | * | (Especially Aggravated Robbery) |
| Appellant. | * | |

For Appellant:

Roger K. Smith, Attorney
104 Woodmont Boulevard
Suite 115
Nashville, TN  37205

For Appellee:

Charles W. Burson
Attorney General & Reporter

Lisa A. Naylor
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

Kymberly Hattaway Haas
Asst. District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN  37201-1649

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Dwjuan L. Bradford, was convicted of especially aggravated robbery. Tenn. Code Ann. § 39-13-403. The trial court imposed a Range I sentence of nineteen years.

In this appeal of right, the defendant contends that Tennessee Code Annotated, Section 40-35-201(b)(2)(A)(i) and (ii), the statute regarding jury instructions on the potential punishment and parole, is unconstitutionally vague; that the jury instructions pursuant to this statute violate due process of law; and that the terms of the statute contravene the separation of powers doctrine. We disagree with each of these contentions and thus affirm the judgment of the trial court.

On September 2, 1994, the victim, seventy-three-year-old Ann Deol, was walking up the stairway to the back door of her residence on Second Avenue South in Nashville. At trial, the state was able to prove that the defendant then emerged from underneath the stairway, snatched the victim's purse, and ran into an alley. When the victim began to scream, a co-defendant shot the victim in the back, thereby causing serious injuries and hospitalization for a period of fifteen days. In a statement made to the police, the defendant acknowledged taking the purse but claimed that he was unaware of the possibility of gunshots, "If I knew something like that would happen, I wouldn't have [participated]." At the conclusion of the proof, the trial court provided instructions to the jury, which later returned a guilty verdict in the charge appearing in the indictment.

Tennessee Code Annotated, Section 40-35-201(b) (1990) requires trial courts, upon the request of either party, to instruct jurors as to the possible penalties for the crime charged and its lesser included offenses:

2

> In all contested criminal cases, except for capital crimes which are governed by the procedures contained in §§ 39-13-204 and 39-13-205, <u>upon the motion of either party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties</u> for the offense charged and all lesser included offenses.

(Emphasis added). The statute was amended in 1994 to include the following language:

> (2)(A)(i) When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses. Such instruction shall include an <u>approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date</u>. Such calculation shall include such factors as the release eligibility percentage established by § 40-35-501, maximum and minimum sentence reduction credits authorized by § 41-21-236 and the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, if applicable.
>
> (ii) Such instructions to the jury shall also include a statement that <u>whether a defendant is actually released from incarceration on the date when such defendant is first eligible for release is a discretionary decision made by the board of paroles</u> based upon many factors, and that such board has the authority to require the defendant to serve the entire sentence imposed by the court.
>
> (B) On an annual basis, <u>the department of correction shall provide each judge exercising criminal trial court jurisdiction with the approximate calculation</u> required in subdivision (2)(A). Such calculation shall be broken down to show the effect of each factor used in making such calculation. If the calculation provided by the department to the judges changes because of a change in the law or correctional policy, court intervention, the governor's prison overcrowding policy or any other such circumstance, the department shall send a revised calculation to the judges as such changes occur.

(Emphasis added).

In this case, the defendant, charged with especially aggravated

3

robbery, asked for jury instructions on the range of punishment. The trial court complied with that request and, in addition, followed the terms of the amendment by including the possible release eligibility dates for especially aggravated robbery, facilitation to commit especially aggravated robbery, aggravated robbery, and robbery. The actual instruction for the primary charge was as follows:

> The punishment for the offense of Especially Aggravated Robbery as charged in the indictment in this case will be imprisonment for a period of <u>not less than fifteen years, nor more than twenty-five years</u>, and a fine not to exceed fifty thousand dollars.
> You are further informed that <u>the minimum number of years a person sentenced to imprisonment for this offense must serve before reaching the earliest possible release eligibility date is four point five years</u>. This calculation is based on the minimum sentence possible which is fifteen years. However, you are instructed that the Court will set the punishment after a separate sentencing hearing, and that the <u>punishment will be set within the applicable range of fifteen to twenty-five years</u> after review of all the relevant factors.
> <u>Whether a defendant is actually released from incarceration on the date when first eligible for release is a discretionary decision made by the Board of Pardons and Paroles and is based on many factors</u>. The Board of Pardons [and Paroles] has the authority to require a defendant to serve the entire sentence imposed by the Court.

(Emphasis added). Only the range of sentence, maximum fine, and the release eligibility dates were changed when the trial court provided these instructions on the lesser included offenses.

The defendant, who claims that the portions of the instructions should not have been charged to the jury, relies upon Article I, Sections 8, 9, 17, and 19, Article II, Sections 1 and 2, and Article VI, Section 19 of the Tennessee Constitution and the Fifth, Sixth, and Fourteenth Amendments to the U. S. Constitution in challenging the constitutionality of the amendment to the statute. More specifically, the defendant insists that the portions of the 1994 amendment requiring "an approximate calculation of the minimum" sentence as opposed to the exact

4

sentence is unconstitutionally vague because it invites a jury to speculate as to punishment. Without any citation to authority, the defendant also complains that the statutory provision precludes a fair and impartial jury by mandating instruction of only the minimum number of years to be served without any reference to the maximum. Finally, the defendant contends that the statute is an infringement by the legislature on judicial powers. Article II, Section 1, of course, divides the powers of government into three departments while Article II, Section 2 prohibits any branch from exercising "any of the powers properly belonging to ... the others...." Tenn. Const. art. II, § 2.

The defendant bases his arguments on the holding in Farris v. State,[1] 535 S.W.2d 608 (Tenn. 1976), a case in which a plurality of our supreme court ruled that a 1973 statute permitting the jury to compute the time a prisoner would serve required undue speculation on the part of the jury. In Farris, three of the justices concluded that the 1973 statute violated Article II, Section 17 of our state constitution in that the subject matter of the act was not adequately set out in the caption but only two of those justices could agree that the statute requiring a charge to the jury on the parole procedure was "impermissibly vague and impossible to apply." 535 S.W.2d at 613. Justice Ray Brock concurred that the act was invalid because the subject matter was not expressed in the caption but rejected the notion that the statute was unconstitutionally vague. Justice Brock stood alone in his conclusion that the requirement that trial judges charge juries on parole eligibility also violated Article II, Sections 1 and 2 of the Tennessee Constitution as an infringement upon judicial powers. Id. The final two justices comprising the 1976 court would have upheld the constitutionality of the act. The position of three of the

---

[1]The statute in Farris required the trial judge to instruct the jury on parole procedures and sentencing. From this information, a jury could theoretically compute or estimate the time to be served. 535 S.W.2d at 609.

five justices on the vagueness issue was reflected in the dissent of Justice William

Harbison:

> There is absolutely no evidence in any of the records
> before this Court that the jury had the slightest difficulty
> in understanding or applying the statutes in question, and
> it is clear from listening to the legislative debates on this
> Act that the General Assembly felt it necessary and
> proper for jurors to be allowed to have a general
> understanding of parole procedures.
>
> There had been a long line of cases in this state, as well
> as in other states, in which jurors had repeatedly asked
> questions of the trial judge as to the effect of a sentence
> which they had under consideration.

Farris, 535 S.W.2d  at 617.

Challenges to legislative acts based upon vagueness are founded in

the terms of Article I, Section 8 of the Tennessee Constitution guaranteeing "the

judgment of his peers or the law of the land."  The concepts of due process of law

have been derived from this provision.  See State v. Bobo, 727 S.W.2d 945 (Tenn.

1987); McCarroll's Lessee v. Weaks, 2 Tenn. 215 (1814).  So, when standards

established by statute "'cannot be determined with reasonable definiteness that any

particular act is disapproved,'" it fails.  Donathan v. McMinn County, 213 S.W.2d

173, 176 (Tenn. 1948) (quoting State v. Lanesboro Produce & Hatchery Co., 21

N.W.2d 792, 795 (Minn. 1956)).  An ordinary person who exercises ordinary

common sense must sufficiently understand the statute so as to be able to comply.

Big Fork Mining Co. v. Tenn. Water Quality Control Bd., 620 S.W.2d 515 (Tenn.

App. 1981); Williams v. State Dep't of Health and Env't, 880 S.W.2d 955 (Tenn.

App. 1994).

This court has addressed the vagueness and due process challenges

presented here in at least two other cases.  In State v. Howard E. King, No. 02C01-

9601-CR-00032 (Tenn. Crim. App., at Jackson, Oct. 22, 1996), app. granted (Tenn.,

6

Mar. 10, 1997), a panel of this court ruled that the plurality view in Farris would not apply because since that ruling, the state has changed from jury- to judge-sentencing. Slip op. at 7. In State v. Curtis Lee Majors, No. 01C01-9602-CR-00076 (Tenn. Crim. App., at Nashville, July 30, 1997), a separate panel determined that the 1994 amendment was not unconstitutionally vague. In distinguishing the ruling in Farris, Judge David H. Welles wrote as follows:

> Juries were provided with information that invited them to speculate about sentences because no approximation was provided. The Farris court concluded that "[j]urors should not be permitted to speculate on the length of sentences, discretionary parole, the accumulation of good and honor time and a whole conglomeration of contingent events which, if they come to pass at all, will come to pass in the future."
>
> Subsequently, the legislature has attempted to remedy this by supplying the estimated figures to juries rather than leaving them on their own to calculate parole eligibility [citing Tenn. Code Ann. § 40-35-201].
>
> * * *
>
> As a result, juries are provided with a figure with a caveat that the actual time served may vary. Although an "approximate," we feel that this figure provides sufficient definition and is not unconstitutionally vague. Furthermore, jurors are protected from the wide open speculation that was apparent with the statutory section considered in Farris.

Majors, slip op. at 13-14 (citations omitted).

In our view, the 1994 amendment passes the vagueness test. Certainly, this newer enactment is no less definitive than the statute under consideration in Farris, which would have been upheld by a majority of the justices sitting in 1976 had the enactment been properly captioned.

The panel in Majors also addressed the due process challenge made by this defendant to the constitutionality of Tenn. Code Ann. § 40-35-201(b)(2):

7

The Defendant also charges that the calculation of the minimum number of years to be served unfairly misleads the jury because the actual time served may be longer. Therefore, he argues that he has been deprived of due process and the right to a fair and impartial jury. We disagree. He claims that the suggestion of the parole eligibility dates may vary due to decision by the Board of the Paroles "based on many factors" invites the jury to speculate. However, we do not believe this differs substantially from the charge of the "possible penalties for the offense charged and all lesser included offenses." Tenn. Code Ann. § 40-25-201(b)(1).

* * *

The legislature has seen fit to provide juries with comprehensive information about the sentencing scheme when either party requests such an instruction. The Defendant complains that the jury was unfairly informed of the earliest release date, but the latest release date has also been provided. It is possible that the Defendant could be sentenced to [the maximum], of which the jury was informed, and serve the entire term while incarcerated. Thus, the maximum sentence was charged as well. We cannot conclude that the defendant has been deprived of due process in this case.

Id., slip op. at 15-16 (citation omitted).

The panel in Majors also considered the separation of powers argument:

The Defendant next asserts that the relevant portions of the statute are a constitutionally impermissible encroachment on the judicial function by the legislature. We disagree. Some functions of the three departments of state government are necessarily overlapping and interdependent. We believe this is particularly true in our criminal justice system. See e.g., Lavon v. State, 586 S.W.2d 112, 115 (Tenn. 1979); Underwood v. State, 529 S.W.2d 45, 47 (Tenn. 1975); Woods v. State, 130 Tenn. 100, 169 S.W. 558 (1914).

Id., slip op. at 14-15.

Our supreme court has held that "[t]heoretically, the legislative power is the authority to make, order, and repeal[;] the executive, that to administer and

8

enforce[;] and the judicial, that to interpret and apply, laws." <u>Richardson v. Young</u>, 125 S.W. 664, 668 (Tenn. 1910) (quoted with approval in <u>Underwood v. State</u>, 529 S.W.2d 45, 47 (Tenn. 1975)). Our court has recently acknowledged that the "authority to grant paroles is not judicial in nature but is administrative." <u>Monroe E. Davis v. Jimmy Harrison, Warden</u>, No. 02C01-9607-CC-00242, slip op. at 3 (Tenn. Crim. App., at Jackson, Jul. 2, 1997) (citing <u>Woods v. State</u>, 169 S.W. 558 (Tenn. 1914)). Nevertheless, our supreme court has observed, "it is impossible to preserve perfectly the theoretical lines of demarcation between the [three] branches of government." <u>Underwood</u>, 529 S.W.2d at 47. "There is necessarily a certain amount of overlapping. The three departments are interdependent." <u>Id.</u> From all of this, we must conclude that the statute did not infringe upon the powers reserved for the judiciary under the state or the federal constitution.

Accordingly, the judgment must be affirmed.


_____
Gary R. Wade, Judge

CONCUR:


_____
David H. Welles, Judge


_____
Curwood Witt, Judge

9